Appeal of HUTTERISCHE BRUDER          Docket No. 2257.
GEMEINDE.

A corporation established for religious purposes is not entitled to exemption from income tax unless its business operations and income are exclusively for religious purposes.

Submitted April 20, 1925; decided May 23, 1925.

*Edmund B. Quiggle, Esq.*, for the taxpayer.
*Willis D. Nance, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, and GREEN.

This appeal is from an asserted deficiency in income tax for the calendar year 1919 in the amount of $1,884.37, all of which is in controversy. From a stipulation read into the record, the Board makes the following

FINDINGS OF FACT.

1. The taxpayer was incorporated under the laws of the State of South Dakota in August, 1905. The purposes of the corporation, as expressed in the preamble of its articles of incorporation, were as follows:

For the purposes of promoting, engaging in and carrying on the Christian religion, Christian worship, and religious education and teachings, according to our religious belief that all members should act together as one being, and have, hold, use, possess and enjoy all things in common, we all being of one mind, heart and soul, according to the word of God revealed to us.

2. The taxpayer was incorporated by descendants and followers of a religious order which was founded in Europe several hundred years ago and which had as one of its chief principles the leading of a communistic life by its members in accordance with precepts contained in the New Testament, as interpreted by them. The practice of this religion in the United States was inaugurated by certain colonists who came from Europe and settled in what is now Bon Homme County, S. Dak., in the year 1874. Shortly thereafter they formed a corporation under the laws of the Territory of South Dakota, which held the land and other property used in the communistic life of the members. Some of the land was acquired by the members by preemption and homestead rights under the public land laws of the United States and transferred by them to the taxpayer, and some of it was acquired by purchase. The Hutterische Bruder Gemeinde was incorporated in August, 1905, as above stated, and succeeded to the lands and other property of the predecessor owners.

3. The taxpayer had no capital stock and no stockholders. Its members consisted only of those who subscribed to the religious beliefs and practices of its organizers.

4. Every person upon joining the taxpayer was required to transfer and renounce to it any property then owned or thereafter acquired by him, which property was to be owned, used, and held by the taxpayer for the common use, interest, and benefit of all its mem-

bers. No member, or heir or representative of any member, was entitled to have or receive any part of any property owned or acquired by the taxpayer, whether upon severance of his membership or upon his death, or upon dissolution of the taxpayer, or otherwise.

5. All members were required to give all their time and services to the taxpayer for the purposes for which it was formed, and to have their husbands, wives, and children who were nonmembers reside with and be supported and instructed by the taxpayer, according to its requirements and beliefs, so long as they should obey its rules, but such persons were required also to give their entire time and services to the taxpayer for the purposes thereof.

6. No member of the taxpayer or any nonmember husband, wife, or child of a member, received or was entitled to receive any compensation for services to the taxpayer other than the necessities of life, namely, clothing, food, and lodging of a plain and simple character, and medical attention when required.

7. The property of the taxpayer consisted of agricultural lands, buildings, machinery, and equipment for the raising and manufacturing of farm products, and buildings used for religious worship and educational instruction, and for living purposes by members and their families. During the year 1919 the taxpayer owned about 9,597 acres of agricultural lands, which were situated in Bon Homme County, S. Dak. The value of all the property owned by the taxpayer was estimated by it in its income and profits-tax returns for the year 1919 to be $1,184,000.

8. The taxpayer maintained its own church and school in a building owned and constructed by it for the purpose. The members and their families lived in dormitories and each family occupied from one to four rooms according to the size of the family; all dined in one dining room and had one kitchen. The members held regular church services on Sundays. On week days they had general church services each evening and each member was required to have individual prayer before retiring. A public school was conducted in a building owned by the taxpayer, according to the State requirements, and every morning before school commenced and again in the afternoon after school was dismissed religious services were conducted in German.

9. The taxpayer produced farm products such as grain, livestock, butter, cream, milk, eggs and poultry, fruit and vegetables. It also owned and operated facilities for converting agricultural raw materials into finished products. During 1919 it owned and operated two grist mills, a broom factory, corncribs, machine shop, creamery, carpenter shop, shoemaker shop, and ferryboat. The products from the above sources were used to provide subsistence for the members of the taxpayer and their families. The taxpayer also sold products from the above sources, including grain, dairy products, fruit, cattle, brooms, hides and furs, flour, and services of the carpenter shop, machine shop, shoemaker shop, and ferryboat to the public at large at the market prices. The greater part of such sales to the public was in the form of farm and dairy products and livestock. In 1919 the gross income of the taxpayer from its sales of products to the public amounted to $96,264.05. After subtracting allowable expenses, including deductions for ordinary and necessary business expenses, interest, taxes, depreciation, and losses, the net income of the taxpayer

for 1919, as reported on its income-tax return for that year, amounted to $25,933.46.

10. The income of the taxpayer, above what was needed by the members and their families and for maintaining its operations, was used to purchase additional lands, buildings, and equipment for the purposes of the corporation. The taxpayer had no investments in stocks, bonds, or other securities, but kept its spare funds invested in lands. At the beginning of the year 1919 it had on hand cash in the amount of approximately $1,293. The taxpayer borrowed money from outsiders at various times, and during the year 1919 its outstanding interest-bearing indebtedness was $72,000. The borrowed funds were used to maintain the operations of the taxpayer. During the year 1919 the taxpayer had about 122 members, not including those of their families who were not members, and its net taxable income for the year as determined by the Commissioner was $20,843.73. Based on this net income the Commissioner has determined a deficiency against the taxpayer for the year 1919 in the sum of $1,884.37, which deficiency is disclosed in a deficiency letter dated January 12, 1925.

11. The taxpayer was dissolved on November 2, 1923, and all of its real and personal property was transferred to certain trustees in trust for the members and for carrying out the purposes for which the corporation was formed. The taxpayer and the Commissioner agree that if the taxpayer is properly taxable upon its income for the year 1919, under the Revenue Act of 1918, the deficiency of $1,884.37 as determined by the Commissioner, is the correct deficiency in tax.

#### DECISION.

The determination of the Commissioner is approved.

#### OPINION.

LANSDON: In this appeal the only question to be determined by the Board is whether the facts as stipulated entitled the taxpayer to exemption from the payment of income taxes under the provisions of section 231 (6) of the Revenue Act of 1918, which is as follows:

Sec. 231. That the following organizations shall be exempt from taxation under this title— * * *

(6) Corporations organized and operated exclusively for religious, charitable, scientific, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual. * * *

The leading decided case covering the sole issue involved in this appeal is *Trinidad* v. *Sagrada Orden de Predicadores*, 263 U. S. 578, which is cited by the taxpayer in support of its contention. To our minds there is a clear distinction between the facts of the cited case and of the instant appeal. Sagrada Orden de Predicadores is a religious corporation that devotes all its income to the purposes for which it was established. It sells only inconsiderable quantities of its products and makes such sales only to persons or institutions within its own organization. In discussing this phase of the business of that corporation, the court said:

As respects the transactions in wine, chocolate and other articles, we think they do not amount to engaging in trade in any proper sense of the term. It is not claimed that there is any selling to the public or in competition with others. The articles are merely bought and supplied for use within the plaintiff's own organization and agencies,—some of them for strictly religious use and the others for uses which are purely incidental to the work which the plaintiff is carrying on. That the transactions yield some profit is in the circumstances a negligible factor. Financial gain is not the end to which they are directed.

The facts in the appeal at bar disclose a situation wholly different from that so clearly set forth in the quoted excerpt from the cited decision. Here we have a corporation operating nearly 10,000 acres of farm lands and from such operations producing a volume of agricultural products far in excess of the needs of its members. Some of the surplus production is sold as raw materials; some is converted into finished products and sold in that form. All sales are to the general public at prevailing prices. The taxpayer also operates a ferryboat, a machine shop, and a carpenter shop for the sale of services to the public, and realizes a portion of its income in that way. Here are varied activities carried on for profit and in direct competition with other citizens of the Republic engaged in similar occupations.

From the sale of its products and services to the public the taxpayer received a gross return in the amount of $96,264.05 for the year involved in this appeal. Statutory deductions reduced the gross income to a net taxable income of $20,843.73. The stipulation discloses the fact that it is the practice of the taxpayer to invest all surplus earnings in additional lands and operating facilities and that none of such income is ever distributed to individuals for their personal use or profit. There is no evidence that any of the funds of the taxpayer have ever been used to spread the doctrines of the Hutterische Bruder Gemeinde beyond the boundaries of the taxpayer's property or devoted to any service valuable to the general public.

The statutory exemption of religious corporations from the payment of Federal taxes is based on the assumption that all the income of such organizations shall be used for the purposes of their foundation and that the public interests will be served by such uses. This is recognized by the court in the case above cited, which said:

Evidently the exemption is made in recognition of the benefit which the public derives from corporate activities of the class named, and is intended to aid them when not conducted for private gain.

It is difficult to discover any benefit to the public flowing from the activities of this taxpayer. It sells its commodities and services on the open market in direct competition with other producers who are of the general public. It excludes the public from all participation in the results of such sales. While it does not distribute its annual profits to its individual members for their private use, it does hold and invest such profits for their common benefit. The results of these practices are that all members of the taxpayer corporation enjoy a greater degree of security from necessity than would be possible if the profits were distributed to them as individuals.

The members of the taxpayer have elected, as is their right under the laws of the Republic, to lead a communistic life. They consti-

tute, in effect, a single family with two principal purposes—the one to lead the sort of religious life that is pleasing and acceptable to them; the other to conduct business operations for the twofold purpose of supplying their own simple physical needs and enlarging their communal possessions. Like every other family living within the law, this taxpayer has the protection and security that is its right under the Constitution and statutes of the United States. Public policy requires that it shall contribute its share of the revenues necessary to sustain the Government which protects it in its rights and privileges.

In this appeal the taxpayer claims exemption from provisions of the tax laws that are of general application. The rule in such cases reverses the general rule that all doubts in construing taxing statutes must be resolved strongly in favor of the taxpayer. The Hutterische Bruder Gemeinde may have been established for religious objects, but it has failed to prove to the satisfaction of the Board that it is operated exclusively for those purposes, and therefore the relief prayed for is denied.