COMMISSIONERS OF DISTRICT OF CO-
LUMBIA v. SHANNON & LUCHS
CONST. CO., Inc.

SAME v. SHILLINGTON.

(Court of Appeals of District of Columbia.
Submitted November 4, 1926.   Decided
January 3, 1927.)

Nos. 4431, 4432.

1. District of Columbia ⟺19—"Educational
institution," within zoning ordinance, con-
sists of all grounds necessary for educational
instruction.

"Educational institution," within zoning or-
dinance excepting educational institutions from
prohibitions applicable to residential districts,
consists, not only of buildings, but of all grounds
necessary for the accomplishment of the full
scope of educational instruction, including those
things essential to mental, moral, and physical
development.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Educa-
tional Institution.]

2. Eminent domain ⟺40—Proposed high
school athletic field held part of "educational
institution," authorizing condemnation with-
out conflicting with residential district zon-
ing laws (Code, § 483).

Proposed athletic field for high school is
part of educational institution, and land there-
for may be condemned under Code, § 483, with-
out conflicting with zoning laws or regulations
in residential district authorizing institutions
of educational character.

3. Eminent domain ⟺9—Appropriation of mon-
ey for high school athletic field held to author-
ize exercise of power of eminent domain by
commissioners (Act June 7, 1924 [43 Stat.
558]).

Act June 7, 1924 (43 Stat. 558), containing
appropriation for school athletic field, held suf-
ficient to authorize the exercise of power of
eminent domain by commissioners of the Dis-
trict to carry the purpose into effect.

Appeal from the Supreme Court for the
District of Columbia.

Separate petitions for condemnation by
the Commissioners of the District of Colum-
bia against the Shannon & Luchs Construc-
tion Company, Inc., and against A. H. Shill-
ington.   Judgment dismissing the petitions,
and petitioner appeals.   Reversed and re-
manded.

F. H. Stephens, J. C. Wilkes, and E. W.
Thomas, all of Washington, D. C., for ap-
pellant.

W. C. Sullivan, of Washington, D. C., for
appellees.

Before MARTIN, Chief Justice, VAN
ORSDEL, Associate Justice, and BARBER,
Judge of the United States Court of Customs
Appeals.

VAN ORSDEL, Associate Justice.   The
commissioners of the District of Columbia
filed petitions in the Supreme Court of the
District for the condemnation of all of square
1307, and south of square 1311, for an athlet-
ic field for the Western High School.   The
proceedings were brought under section 483
of the District Code, which provides as fol-
lows:   "Whenever land in the District is
needed for the use of the United States, or by
the commissioners of the District for sites of
schoolhouses, fire or police stations, or for a
right of way for sewers, or for any other mu-
nicipal use authorized by Congress, and the
same cannot be acquired by purchase from
the owners thereof at a price satisfactory to
the officers of the Government authorized to
negotiate for the same, application may be
made to the Supreme Court of the District by
petition in the name of the United States or
of said commissioners, as the case may be, for
the condemnation of said land or said right of
way and the ascertainment of its value."

It is averred in each of the petitions that
the commissioners endeavored to acquire the
land by purchase, but were unable to agree
on a satisfactory price.   The authority under
which the proceedings were brought is found
in the Act of Congress of June 7, 1924 (43
Stats. 558), making appropriations for the
District of Columbia for the fiscal year end-
ing June 30, 1925, as follows:   "For athletic
field for the Western High School, $125,000."

The property owners, in their answers,
challenge the jurisdiction of the court to en-
tertain the petitions, on the ground that un-
der the provisions of the zoning law and reg-
ulations the property could not be used as
an athletic field, and consequently cannot be
condemned for that purpose.   The zoning law
and the regulations thereunder control the
height, area, and use to which buildings in the
District may be constructed and used.   The
height regulations control the height to which
buildings in certain districts may be erected;
the area regulations establish the maximum
area of a lot upon which buildings of stated
dimensions may be constructed; while the use
regulations prescribe the use to which build-
ings may be put.   It is with the latter regula-
tions that we are concerned in this case.

Section 2 of the building regulations, un-
der the heading "Use Districts," provides as
follows:   "In order to regulate the location
of commerce, business, trades, and industries,
and the location of all buildings designed or
occupied for specified uses, the District of
Columbia is hereby divided into use districts,
of which there shall be four, known as:   (a)
Residential; (b) first commercial; (c) second

commercial; (d) industrial. * * * Except as hereinafter provided, no building shall be erected or altered, nor shall any building or premises be used for any purpose other than what is permitted in the use district in which such building or premises is located."

Section 3 of the regulations, under the heading "Residential District," provides: "In the residential district all buildings and premises, except as otherwise provided in these regulations, shall be erected for and used exclusively as: 1. Dwellings. 2. Apartment houses or tenements. 3. Hotels. 4. Lodging or boarding houses. 5. Churches. * * * 8. Institutions of an educational, philanthropic or eleemosynary character."

It was stipulated that the lands sought to be condemned are zoned within a residential district, and that the foregoing regulations were promulgated by the zoning commission under the authority conferred in the zoning law. The trial justice dismissed the petitions, stating, as a reason therefor, "that the purpose for which the District proposes to condemn this property is within the prohibition of the zoning law, and that the property cannot be condemned for a purpose forbidden by law."

It is contended by counsel for the commissioners that the proposed athletic field is being acquired for use accessory to and a part of the Western High School, and as such may be properly located within a residential district without conflicting in any way with the zoning law or regulations; in other words, that the land sought to be condemned is to be used as part of an educational institution and for educational purposes.

[1, 2] We think this contention is well founded. An educational institution consists, not only of the buildings, but of all the grounds necessary for the accomplishment of the full scope of educational instruction. More properly defined, a modern educational institution embraces those things which experience has taught us are essential to the mental, moral, and physical development of the pupils. It is not the modern conception of a public school that it be erected on a lot merely large enough in area to contain the school building. In addition to the buildings there should be playground space, basketball stops, chinning bars, room for calesthenics, all in the open air. It is also for the general welfare and safety that the school children be furnished a place in which to play, removed from the dangers of street traffic.

That these accessories are an essential part of a modern educational institution is in line with the recent decisions of many courts.

In the case of State ex rel., School District v. Superior Court, etc., 69 Wash. 189, 124 P. 484, a question was involved very similar to the one before us. In that case it was sought to acquire about 2¼ acres additional to a school site of 2 acres to permit of adequate outdoor exercise for the pupils. The Supreme Court of the state of Washington in sustaining the right of the school district to acquire the land said: "It is urged that the use for which the land is sought to be taken is not a public use. It is contended that the land is sought rather as a playground for the pupils attending the school than for strictly school purposes. The testimony of the superintendent of the school, from which we have hereinbefore cited, undoubtedly lends color to this contention; but nevertheless we think the use for which the land is sought to be taken is a public use. The physical development of a child is as essential to his well-being as is his mental development, and physical development cannot be had without suitable places for recreation and exercise. To acquire such ground is therefore within the province of the public schools." See, also, Sorenson v. Christiansen et al., 72 Wash. 16, 129 P. 577; Webster City v. Wright County et al., 144 Iowa, 502, 123 N. W. 193, 24 L. R. A. (N. S.) 1205.

It has also been held that property appropriated to recreation for school children, for instruction in farming, for musical conservatories, and for libraries, is devoted to educational purposes, and as such is exempt from taxation under statutes exempting educational institutions. In the case of German Gymnastic Association v. Louisville, 117 Ky. 958, 80 S. W. 201, 65 L. R. A. 120, 111 Am. St. Rep. 287, under such an exemption statute, the question arose as to what constituted "institutions of education," and the point to be determined was whether the German Gymnastic Association came within that classification. On this point the court said: "The only question to be answered is: Is it an institution of education? Education is not confined to the improvement and cultivation of the mind. It may consist of the cultivation of one's religious or moral sentiments. It likewise may consist in the development of one's physical faculties. Those in charge of colleges and institutions of learning recognize this to be true. There students are taught, not only the dead and modern languages, mathematics, and the sciences, etc., but the Bible and Christian evidences, and a gymnasium is maintained, and football and other athletic sports are encouraged. The cultivation of the mind, the improvement of our moral and

religious natures, and the development of our physical faculties are necessary to a perfect education. * * * This is of as much importance to the state as is the acquisition of a knowledge of Latin, Greek, mathematics, etc."

In the case of Seminary of our Lady of Angels v. Barber et al., 42 Hun (N. Y.) 27, the court held that a tract of land, separated from the buildings by a road and railway tracks and cultivated as a farm, was a part of the institution, on the theory that "suitable recreation and physical exercise are deemed requisite to health and successful mental culture." Indeed the courts, and there are numerous decisions that might be cited, uniformly hold that physical culture and development is an essential part of our educational system, and that grounds used for this purpose in connection with an educational institution become and are a part of the institution itself. In this view of the case we have no difficulty in reaching the conclusion that the purpose for which this property is sought to be taken is a public use, and that it may be condemned and appropriated to the use designated by Congress, without encountering in any respect the legal limitations of the zoning law and regulations.

[3] We are of opinion that the mere act of appropriating the money by Congress, for the purpose specified in the act, is sufficient to authorize the exercise of the power of eminent domain by the commissioners to carry the purpose into effect. Other objections are made by counsel for petitioners going to the sufficiency of the petitions. It is unnecessary to consider these objections in detail, since we find the petitions affirmatively allege that the land is needed for the purpose for which condemnation is sought, and that an effort has been made to purchase the same, resulting in failure to reach an equitable agreement.

The judgments are reversed, with costs, and the causes are remanded for further proceedings.