STATE OF MONTANA, Plaintiff and Respondent, v. KING COLONY RANCH, an Association and KING COLONY RANCH, a Corporation, Defendant and Appellant.

No. 10014.

Submitted February 10, 1960. Decided March 17, 1960.

Rehearing denied April 15, 1960.

350 Pac. (2d) 841.

Howard C. Gee, Lewistown, Ralph J. Anderson, Helena, for appellant. Ralph J. Anderson argued orally.

Forrest H. Anderson, Atty. Gen., Edward C. Schroeter,

George T. Bennett, Asst. Attys. Gen., for respondent, George T. Bennett argued orally.

MR. JUSTICE ANGSTMAN delivered the Opinion of the Court.

This action is to recover corporation license taxes alleged to be due to plaintiff from defendant under section 84-1501, et seq., for the fourteen years beginning in 1935 to and including 1948, together with penalties and interest.

The complaint consists of fourteen separate causes of action, one for the tax for each of said years.

Prior to January 20, 1947, the King Colony was an unincorporated association. On that date it incorporated under the laws of Montana and became a corporation with its principal place of business in Fergus County where it owns lands, machinery and livestock and conducts farming operations.

Its Articles of Incorporation recite that it is an international Church Society which devotes its entire membership to farming, stock growing, and all other branches of agriculture; that it follows the teachings and tenets of John Huss and of the Hutterische Church Society, living communal lives in colonies made up entirely of non-profit membership, devoted exclusively to agricultural pursuits for the livelihood of its members, dependents and descendants.

The Articles provide that all of its members shall live a communal life as a community brotherhood. No member shall live outside the Colony nor hold any special right in the corporation property. Membership is strictly voluntary. The corporation is governed by a board of directors consisting of five adult male members. The corporation shall not be conducted for profit for any of the members. Its income is used to provide for the needs of its members and for the acquisition of additional property.

The answer denies most of the material allegations of the complaint and contains several separate and affirmative defenses.

By these defenses, defendant claims to be exempt from the tax in question because of paragraph "Sixth" of section 84-1501, which provides that "There shall not be taxed under this title any income received by any— * * *

"Sixth. Corporation or association organized and operated exclusively for religious, charitable, scientific or educational purposes, no part of the net income of which inures to the benefit of any private stockholder or individual."

Defendant also contends that the purported tax runs counter to the First Amendment to the United States Constitution and section 4, of Article III, of the Montana Constitution, and that it conflicts with paragraph 1 of the Fourteenth Amendment to the United States Constitution, all having to do with religious freedom.

The cause was tried to the court sitting without a jury. The court found for plaintiff on all issues and entered judgment accordingly.

Defendant has appealed from the judgment. It is defendant's contention that it is exempt from the tax because it is a religious association or corporation.

It was shown by the evidence, and the court found, that no member of the Colony receives any salary; that they receive no income and own no property and have no estate to transfer to their heirs; that the Colony provides living quarters, food, clothing, medical and hospital care for all members when necessary; the Colony also provides school for the children and cares for its aged without public expense. The court found that while the Colony is in some respects a religious organization, it is not organized and operated exclusively for religious, charitable or educational purposes, but that during the times in question it engaged in the accumulation of property and wealth and carried on the general business of farming and ranching in competition with all other farmers and ranchers.

Defendant relies strongly on the case of Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 872,

87 L.Ed. 1292, 46 A.L.R. 81, in support of its contention. That was a case involving Jehovah's Witnesses. It struck down a license tax imposed by city ordinance for the privilege of canvassing or soliciting within the municipality. The acts there involved consisted of the sale of religious books and pamphlets. The court pointed out in that case that petitioners "spread their interpretations of the Bible and their religious beliefs largely through the hand distribution of literature by full or part-time workers." The court pointed out that it was a form of missionary evangelism, but indicated that in some cases it will be difficult to determine whether a particular activity is religious or purely commercial. That case was followed in the later case of Follett v. Town of McCormick, 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938, 152 A.L.R. 317, which also had to do with Jehovah's Witnesses and to the same effect is State v. Van Daalan, 69 S.D. 466, 11 N.W.2d 523.

Here, it is quite plain that the activities in carrying on the farming and agricultural pursuits are purely commercial. It is merely the means of acquiring a livelihood for the members of the Colony and of accumulating money for expansion purposes. The farming operations have nothing to do with the practice of the religious beliefs of the members. It is no different from a similar group or colony engaged in manufacturing and marketing automobiles for a livelihood.

Defendant contends that the tax is one for the privilege of engaging in business in the corporate or quasi corporate form within the rule of Equitable Life Assurance Co. v. Hart, 55 Mont. 76, 173 P. 1062, and Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, and that it organizes as a corporation only because the religious beliefs of the members cause them to assume the corporate or quasi corporate form. The tax is not upon the privilege of forming a corporation, but upon the privilege of conducting business in that form.

Statutes quite similar to paragraph "Sixth" of section 84-

1501, which exempt corporations or associations "organized and operated exclusively for religious \* \* \* purposes, no part of the net income of which inures to the benefit of any private stockholder or individual", have been held not to exempt Hutterische Colonies from the payment of the Federal income tax. Hutterische Bruder Gemeinde, 1 B.T.A. 1208, and Hofer v. United States, 64 Ct.Cl. 672.

A non-discriminatory license tax on these activities does not interfere with religious freedom or the free exercise of religion. The court did not err in holding that the license tax was and is valid so far as the religious aspect of the case is concerned.

Defendant also contends that it is exempt from this tax because of paragraph "Twelfth" of section 84-1501 which exempts "Corporations or associations organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt from the tax imposed by this title".

Defendant corporation was not organized for the exclusive purpose of holding title to property within the meaning of that section. It engages in extensive farming operations, raises and sells livestock and does everything that any other corporation owning and operating agricultural land does.

Defendant also claims exemption under paragraph "First" of section 84-1501, which exempts labor, agricultural or horticultural organizations.

This provision was evidently adopted to give effect to that part of section 2, of Article XII, of our Constitution which authorizes the Legislature to exempt from property tax "property as may be used exclusively for the agricultural and horticultural societies".

Section 501 of the Internal Revenue Code of 1954, 26 U.S.-C.A., § 501, exempts labor, agricultural or horticultural organizations. Our statute uses the same language.

The Federal Tax Regulations (1954) provide that the organizations contemplated by what is now section 501 as entitled to exemption from income taxation are those which (1) Have no net income inuring to the benefit of any member; (2) Are educational or instructive in character, and (3) Have as their objects the betterment of the conditions of those engaged in such pursuits, the improvement of the grade of their products, and the development of a higher degree of efficiency in their respective occupations.

In 6 Mertens Law of Federal Income Taxation, § 34.19, it is said:

*"Labor, Agricultural or Horticultural Organizations.* The exemption of labor, agricultural and horticultural organizations is by its terms unconditional but interpretation has considerably qualified and restricted the exemption. While the statute contains no express requirement prohibiting the inurement of the earnings of such organization to the benefit of private shareholders or individuals, the Regulations have provided that requirement and the Regulations have not been challenged in the courts. The principle [sic] qualification for exemption under the Regulations are the following: (1) the organization must have no net income inuring to the benefit of any member, (2) it must be educational or instructive in character, and (3) it must have as its object the betterment of the conditions of those engaged in labor, agricultural or horticultural pursuits, the improvement of products and the development of a higher degree of efficiency in the respective occupations. The fact that Congress has repeatedly re-enacted the same statutory language with knowledge of the well-established administrative interpretation, lends foundation to an assertion of legislative acquiescence."

The State Board of Equalization was and is warranted in following the Federal interpretation of the language which the Legislature of this state adopted from the Act of Congress.

The contemporanoeus construction placed on the stat-

ute, by the officers chargeable with the duty of administering it, is entitled to great weight. In re Wilson's Estate, 102 Mont. 178, 56 P.2d 733, 105 A.L.R. 367; State ex rel. Ebel v. Schye, 130 Mont. 537, 305 P.2d 350; State ex rel. Erwin v. Warren, 124 Mont. 378, 224 P.2d 142.

Defendant, as an agricultural organization, is not exempt from the license tax here imposed.

The only remaining question is whether there is any limitation upon the Board of Equalization as to the number of years over which it may go back to impose a tax.

Defendant contends that when the Board took action on October 8, 1949, it could not levy an assessment for any year prior to 1944. It relies on that part of section 84-1505, which provides: "In cases of refusal or neglect to make such return, and in cases of erroneous, false, or fraudulent returns, the state board of equalization shall, upon the discovery thereof at any time within five (5) years after said return is due, make a return upon information obtained as provided for in this act, and the assessment made by the state board of equalization shall be paid by such corporation immediately upon notification of the amount of such assessment."

A similar statute has been held by this court to be a limitation upon the Board's authority. State ex rel. Anderson v. State Board of Equalization, 133 Mont. 8, 319 P.2d 221, and State ex rel. Conn v. Robinson, 133 Mont. 549, 327 P.2d 390.

But the State contends that Chapter 166, Laws of 1933, which is now section 84-1513, being a later enactment and which authorizes the Board to assess or begin a proceeding in court "at any time", has worked an implied repeal of that part of section 84-1505, which limits the Board to five years. This contention overlooks the fact that section 84-1505 in its present form is a later enactment than section 84-1513. When section 84-1513 was enacted, what is now section 84-1505 limited the Board to a three-year period. Section 84-1505 was amended by Chapter 209, Laws of 1945 to provide for the present five-year

limitation. Hence, the last law on the subject is Chapter 209, Laws of 1945, which limits the Board to a five-year period.

The judgment so far as it goes back of 1944 is unauthorized and to that extent must be modified. The cause is remanded with directions to eliminate from the judgment all taxes, penalties and interest due for years preceding 1944 and as thus modified it will stand affirmed. Defendant will recover one-third of its costs on appeal.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE CASTLES concur.

MR. JUSTICE BOTTOMLY concurring in part and dissenting in part.

I concur with the majority opinion in that the State Board of Equalization is limited in its authority to assess tax for more than five years. However I believe it should be pointed out that this case also concerns an assessment of tax for the year 1944. While this is within the five-year assessment, in 1944 the limitation to assess tax was only three years. Thus the Board's power to assess a tax for that year expired in 1948 and by extending the power from three to five years, the Board was not given a new grant of power since the extension of power was not specifically made retroactive.

I dissent from the majority opinion holding that this religious corporation is subject to a license tax imposed upon it for the privilege of practicing its religion. The imposition of such a privilege tax is expressly forbidden to the State by the Federal Constitution. The First Amendment of the Federal Constitution provides, in part, ''Congress shall make no law respecting an establishment of religion, or prohibiting the *free* exercise thereof * * *.'' Emphasis supplied. The Fourteenth Amendment of the United States Constitution makes this applicable to the States. These Constitutional provisions prohibit the State of Montana from requiring that this corpora-

tion pay a license fee for the privilege accorded its members of living and worshipping according to the dictates of their conscience and their understanding of the Bible. See Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292, 146 A.L.R. 81. In addition, section 84-1501 (6), R.C.M.1947, exempts from the corporation license tax a "Corporation or association organized and operated exclusively for religious, charitable, scientific or educational purposes, no part of the net income of which inures to the benefit of any private stockholder or individual".

I believe such exemption means exactly what it says. This corporation comes within the exemption and should be exempt because of its provisions. I would reverse the order and judgment of the district court and order the cause dismissed.

MR. JUSTICE ADAIR:

I concur in the foregoing dissenting opinion by Mr. Justice Bottomly.