FLATHEAD LAKE METHODIST CAMP, a NON-PROFIT
CORPORATION, PLAINTIFF AND RESPONDENT, v. CORREAN M.
WEBB, AS COUNTY TREASURER OF LAKE COUNTY, MONTANA,
DEFENDANT AND APPELLANT.

No. 10790
Submitted January 12, 1965. Decided February 18, 1965.
399 P.2d 90.

Richard P. Heinz (argued), Polson, for appellant.

Skelton & Hendricks, Missoula, Robert Skelton (argued), Missoula, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal, by the defendant from a judgment entered in the district court of Lake County, Montana.

The record discloses that plaintiff is a non-profit corporation, incorporated for the purpose of establishing and maintaining a Methodist Church summer camp on Flathead Lake in Lake County, Montana. The corporation owns two tracts of land, one of 3.55 acres which is not used for camp purposes and is not claimed to be exempt, and the other being the prop-

erty here involved and consists of approximately twenty-two acres in the form of a small peninsula on the edge of the Lake. The plaintiff and several Montana Methodist congregations maintain some twenty-eight improvements on this property. The various congregations have built and maintain fourteen dormitory cottages. Other improvements include faculty housing, employee accommodations, an auditorium-dining room building, storage and shop, and bathing facilities. There is a garage, parking area, boat dock, water supply tank, and garbage disposal. Also, there is a chapel and four classroom buildings. One edge of the peninsula is a ragged shore-line with rocky bluffs. This side of the land is used for nature walks and meditation. The cities of Polson and Kalispell each lie about twenty-eight miles away in opposite directions, making it necessary that the camp be virtually self-sufficient.

The campsite was purchased and some of the facilities were constructed by money obtained from the fire insurance collected on the former camp in Glacier Park which burned in 1932. Other income came from the sale of the property whereon the burned camp had been situated. The funds for the maintenance of the camp come from private donations, Methodist Church contributions, and, in small measure, from the money paid by the children and others who come there.

The camp caters principally to children on an organized, two-week basis. They are segregated by age throughout the summer, each two-week camp having approximately 150 children in attendance. The area served is somewhat larger than a circle encompassing western Montana. The activities range from instruction, praying, meditation, and nature walks to secular recreation such as archery, swimming, and crafts. Each day is organized to provide a balanced program of arts and crafts, physical activity, religious instruction, rest, chores, and prayers. The majority of the children are Methodists, but there is evidence that many different faiths have been represented there over the years.

In 1962, plaintiff paid real estate taxes to the treasurer of Lake County under protest and commenced this action to recover them. Plaintiff alleged that all of the property came within the tax exemption of Article XII, § 2 of the Montana Constitution and section 84-202, R.C.M.1947. The constitutional provision provides in part:

"The property of the United States, * * * shall be exempt from taxation; and such other property as may be *used exclusively* for the agricultural and horticultural societies, *for educational purposes, places for actual religious worship, * * * institutions of purely public charity * * ***, may be exempt from taxation." (Emphasis supplied.)

Section 84-202, is legislative expression of the same exemption and provides in part:

"The property of the United States, * * * such other property as is used exclusively for agricultural and horticultural socities, for educational purposes, places of actual religious worship, * * * and institutions of purely public charity * * * are exempt from taxation, but no more land than is necessary for such purpose is exempt * * *."

The original complaint sought to establish that the camp was a "place for actual religious worship," but so much testimony was elicited on the educational and charitable aspects of the camp that the plaintiff's motion at the close of the testimony to amend the complaint to include those two grounds was granted.

The case was tried before District Judge E. Gardner Brownlee and judgment was rendered for the plaintiff. The judgment holds all of the property to be exempt under section 84-202, R.C.M.1947. The defendant, Lake County Treasurer, brings this appeal contending that the chapel and the four classroom buildings and the real property they are situated on are properly exempt, but that it was error to exempt all of the campsite. The basis for this alleged error is the clause in the statute reading: "no more land than is necessary for such purpose is exempt * * *."

The appellant argues that only the four classroom buildings and the chapel are "necessary" as a place of actual religious worship within the meaning of that phrase in the statute. In other words, there is no contest that some of the property is exempt. Appellant only seeks to restrict the exemption. While we might be persuaded to agree with counsel that only the chapel and the classroom buildings are necessary for actual religious worship we must consider much of the argument on that point to be wasted because the complaint was amended to include other grounds for exemption. We must test the instant case from the viewpoint of the religious, educational, and charitable grounds for exemption. It seems counsel has stressed the religious worship argument because that was the way the complaint read until the conclusion of the testimony. At the close of the case, plaintiff moved to amend the complaint to conform to the proof.

Our review of the record leads us to the conclusion that the "exclusive" use of the premises is for "educational purposes" within the meaning of the statute. The term "educational purposes" is not, by the weight of authority, defined in terms of the common scholastic institutions of grammar school, high school, and university or college. People ex rel. Board of Trustees of Mt. Pleasant Academy v. Mezger, 98 App.Div. 237, 90 N.Y.S. 488. Organizations for the social, intellectual, physical, or religious welfare of children are exempt equally. The end of the education may be to develop either the mental, physical, or moral qualities. Westminster Foundation of the City of Philadelphia v. Board of Revision of Taxes, 70 Pa.Dist. & Co.R. 111, 41 Mun. 267; Buffalo Turn Verin v. Reuling, 155 Misc. 797, 281 N.Y.S. 545; Charter Oak Council, Inc., Boy Scouts of America v. Town of New Hartford, 121 Conn. 466, 185 A. 575; Stoolman v. Camden County Council, Boy Scouts of America, 77 N.J.Super. 129, 185 A.2d 436. Religious education is exempt as an "educational purpose" and not as "actual religious worship" even though elements of

the latter may be present and may serve to strengthen the exemption of all of the property.

Our court has stated: "Education may be particularly directed to either mental, moral, or physical powers or faculties, but in its broadest and best sense it embraces them all." McNair v. School Dist. No. 1 of Cascade County, 87 Mont. 423, 428, 288 P. 188, 190, 69 A.L.R. 866. It has been held elsewhere that "education" includes the cultivation of one's religious or moral sentiment. Commissioners of District of Columbia v. Shannon & Luchs Const. Co., 57 App.D.C. 67, 17 F.2d 219. The camp involved in the instant case is more directly devoted to an "educational purpose" than to the religious or charitable purposes, at least insofar as a tax exemption is concerned. We will examine the other two bases before explaining the "educational purposes" aspect further.

 The amended complaint includes as grounds for exemption the phrase in the statute exempting an "institution of purely public charity." It cannot be said that the exclusive use of this property is as a charitable institution without giving the term "institution of purely public charity" too broad a definition. A charity may be devoted to bringing people under "religious influence." The beneficiaries of the charity may pay a small portion of the cost. Also, the activity may be limited to a particular class so long as the numbers who may participate remain somewhat indefinite. Finally, when exempting an institution of charity, sufficient residence and recreation area may also be exempt. 51 Am.Jur., Taxation, §§ 601, 603, 607. Thus, even casually it is seen that the camp might be exempt as an institution of purely public charity.

The camp also has many elements of religious worship, and counsel for appellant emphasizes this exemption basis repeatedly. Appellant cites several Pennsylvania cases showing that the phrase "actual religious worship" contemplates the temple, chapel, or church building only. City of Philadelphia to Use of State Paving & Const. Co. v. Overbrook Park Congregation,

171 Pa.Super. 581, 91 A.2d 310. Other Pennsylvania cases are cited to show that property surrounding a church cannot be exempt by borrowing exempt status from the church structure. Second Church of Christ Scientist of Philadelphia v. City of Philadelphia, 398 Pa. 65, 157 A.2d 54, 75 A.L.R.2d 1103. However, all of the cases so cited involve parking lots, lots, open fields, etc., surrounding the church structure. The campsite presented here is not controlled by those cases. Our research shows us that Pennsylvania would agree with that distinction. Eastern District Council of the Assemblies of God v. Zendt, 42 Pa.Dist. & Co.R. 235, 58 Montg. 1. In that case there was a campsite situation similar to the one involved here. The only major difference seems to be that the camp was for older people, and so the recreational aspects were not emphasized to the degree they have been at the Flathead Camp for childrn. However, thère was a definite recreational program at the camp. The Pennsylvania Constitution has a tax exemption almost verbatim with the Montana provision. The Pennsylvania Court considered all three grounds of exemption and settled on characterizing the camp as an "institution of purely public charity." It was emphasized by the court that they were not excluding the religious or educational characterizations by their decision, but only felt that the charity classification fit that particular campsite situation better than the rest. The chief value of that case is to show that any court might have difficulty describing the nature of a religious oriented summer camp.

The only reason for struggling with a characterization is the presence of the words "exclusive use" in the statute. Those words have been consistently held to mean the primary and inherent use and not the mere secondary or incidental uses of the property. Salvation Army v. Hoehn, 354 Mo. 107, 188 S.W.2d 826. This definition was to force an organization or individual seeking exemption to show a right to an exemption on the basis of one of the categories enumerated in the statute to avoid general application of the statute. For ex-

ample, an organization may have a religious, educational, and charitable purpose but still not be entitled to an exemption because of some overriding factor which serves to deny it. See State v. King Colony Ranch, 137 Mont. 145, 350 P.2d 841, where any right to exemption by the church-farm community was lost by the presence of a dominant commercial aspect to the operation.

One cannot escape the obvious fact that the camp here does have a definite religious, educational, and charitable nature about it. So much so that it is very difficult to point to one of the categories as the primary or inherent use of the premises. However, we think it clear, and do hold, if such a holding be necessary, that the exclusive use of the camp is more directly educational than anything else. Appellant has referred to the fact that the camp is occasionally rented out to private groups for a nominal fee. In addition, we gather both from our own experience with this type of camp and from the comments in the transcript that the children in attendance do have an enjoyable recreational stay at the camp. But the clear purpose and achievement of the camp is to teach children how to relax, how to be better citizens, how to assert a Christian influence on their home communities, how to appreciate God and morality through closeness to nature, and how to grow to maturity. Qualities of character and a good sense of moral values must be learned. They may or may not be being taught to them in their homes, but it certainly is being taught to them at this camp. The fact that the children's day is so carefully planned to include instruction is the most crucial aspect of our decision that the camp fulfills an educational purpose. This is not a case where all activities are recreation oriented, like many summer camps for children are. Those camps do have a good influence on the children who attend, but they are more directly benefiting the children by allowing them to "let off steam." This camp is calculated, designed, and programmed to lead the children through a two-

week course in the practice of a moral and Christian life. Should the camp lose this substantive characterization we would then be of a mind to classify it as a mere recreational camp and deny the exemption.

Appellant has cited authority that the exemption statute is to be strictly construed against the exemption. Cruse v. Fischl, 55 Mont. 258, 175 P. 878; Town of Cascade v. Cascade County, 75 Mont. 304, 243 P. 806. We agree with this rule and respect it, but are compelled to view each case from a realistic standpoint. The motivation for our characterization of this camp as one devoted to "educational purposes" is expressed by the New York Court in the Buffalo Turn Verin case, supra, as follows:

"We must, as in all other judicial determinations, place in juxtaposition the two extremes of judicial interpretation. On the one hand is the policy of strict construction which frowns upon tax exemption. [Citing cases.] On the other hand, innocent collateral activities essential to the furtherance of the true purposes of the corporation should not blind the court to the genuineness of those purposes nor to the sincerity of their actual accomplishment." [Citing cases.] 281 N.Y.S. 545, at page 546.

Such an approach is not inconsistent with the rule of strict construction set forth in the Cruse and Cascade cases, supra.

The question of how much land is necessary for the fulfillment of "educational purposes" is a factual one because the Legislature has seen fit to make it so in the exemption statute. Numerous authorities are collected in 51 Am.Jur., Taxation, § 623, showing that besides the property that is strictly used for "educational purposes," there is to be allowed exemption for a sufficient amount of land for recreation, residence, and personnel needs. In People ex rel. v. Catholic Bishop of Chicago, 311 Ill. 11, 142 N.E. 520, an area, near a religious educational center, had a lake and was used by the students for boating and swimming in the summer and skating in the win-

ter. In addition, there were walks, gardens, wooded areas, and a baseball-tennis area. All of this real estate and its recreational improvements were exempt as "being used exclusively for school and religious purposes."

The decision of this court in Montana Catholic Missions v. Lewis and Clark County, 13 Mont. 559, 35 P. 2, 22 L.R.A. 684, is in no way altered by our decision here. In that case the crucial element was the fact that the land sought to be exempt was not in actual use at the time exemption was claimed. All that the court held was that in order to secure exemption privileges the land would have to be in use; mere intention to use was not sufficient. We certainly are not dealing with inactive property here.

In conclusion, it is not proper to segregate this land and exempt only a part of it. Even without relying on the religious and charitable character of the property, the whole of the land is exempt as land used for "educational purposes." The presence of religious and charitable overtones only strengthens our decision. Christian Camps, Inc. v. Village of Speculators, 275 App.Div. 868, 88 N.Y.S.2d 377. The question of the amount of land is a factual one and has been resolved satisfactorily by the district judge. See Anno. 134 A.L.R. 1176, where it is explained that the exemption extends to the amount of land found necessary for the exercise and enjoyment of the property for educational purposes.

The limits of land necessary for the accomplishment of a particular "educational purpose" is not decided in this opinion because we only hold that the district court had substantial evidence to find, as it did, that the approximately twenty-two acres with twenty-eight improvements is necessary in this case.

The other specifications of error have been answered in the course of this opinion, as all four deal generally with the exemption and the amount of land necessary.

The judgment is affirmed.

MR. JUSTICES JOHN CONWAY HARRISON, ADAIR, and CASTLES concur.

HONORABLE NAT ALLEN, District Judge, sitting in place of Mr. Justice DOYLE:

I dissent. Exemption statutes should be strictly construed. With this point both counsel for respondent and the majority opinion agree and yet this summer camp which entices children up there with the lure of boating, swimming, fishing, archery, horseshoes, water skiing, and other summer pastimes that can only be enjoyed on a beautiful lake like Flathead is now construed by the court to be either a "place of actual religious worship" or an "educational" institution and while the transcript deals very little with educational matters, it does a great deal with religious matters which was the theory on which the case was tried. The respondent moved to amend his complaint to conform to the proof at the end of the testimony and the lower court said it would do so on its own motion.

The majority opinion grounds its decision on the fact that the camp is "calculated, designed, and programmed to lead the children through a two-week course in the practice of a moral and Christian life" and they are not simply there to "let off steam." Thus, they become educational and are therefore exempt. The majority may perceive this as a sound distinction but I wonder how the assessor will apply such a principle? If he went up to see and perceived that they were letting off steam, then it would be taxable, if not, it is exempt. I predict that under this decision all the assessor can do is to allow exemptions to all the churches up there and if he does not, some district court will feel obliged to do so under this decision and a great deal of this 75 dollar a foot lake front land will gravitate to exemption status, since it will be no problem for any church to put on a program that will nicely come within the scope of the evidence here presented.