No. 83-166

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

OLD FASHION BAPTIST CHURCH,

Plaintiff and Appellant,

vs.

MONTANA DEPARTMENT OF REVENUE, et al.,

Defendants and Respondents.

Appeal from:  District Court of the Second Judicial District,
In and for the County of Silver Bow
Honorable ~~Mark Sullivan~~, Judge presiding.
_ARNOLD OLSEN_

Counsel of Record:

For Appellant:

John Leslie Hammer argued, Butte, Montana

For Respondents:

Larry G. Schuster argued, Helena, Montana
R. Lewis Brown, Butte, Montana

Submitted:  September 13, 1983

Decided:  November 3, 1983

Filed:  **NOV 3 - 1983**

_Ethel M. Harrison_
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Old Fashion Baptist Church appeals from a Silver Bow County District Court judgment disallowing its claimed property tax exemptions. We affirm in part and reverse in part, and remand for further proceedings.

On July 23, 1975, the Church recorded a grant deed to lots 10-16 in a subdivision near Butte. On the same day a notice of purchasers interest was recorded by the Church for lots 6-9 in the same subdivision. All lots are surrounded by one fence.

On lots 10-11, there is a building used as a church school and place of worship. There is a house on lot 14 used as a parsonage. A road leading to the church crosses lots 6, 7, 8 and 9. Other portions of lots 6-9 as well as the rest of the lots are used for recreational activities by church members but are unoccupied and unimproved. A softball backstop has been erected on one of the lots. Reverend Gary Miller, pastor of the Church, testified that the property was purchased for convenience and usage and all of the property is used by the school ministry and youth ministry for religious services and fellowship.

The Montana Department of Revenue (DOR) granted tax exemptions to lots 10-16 in 1980. However, the exemption for lots 6-9 was denied, and property taxes thereon were assessed for 1975 and all subsequent years.

Since taxes were delinquent on lots 6-9, Lee MacDonald took a tax assignment on those lots and, without proper notice to the Church, obtained a tax deed and recorded the deed. On March 3, 1980, MacDonald quitclaimed his interest in lots 6-9 to James Walters by recorded deed. On May 22,

2

1980, the Church recorded its deed from Marjorie Noland for lots 6-9.

There is some evidence that MacDonald or Walters visited the pastor of the Church and demanded $6,000 to reconvey their alleged interest acquired by tax deed. There is also evidence that threats of ouster were made. MacDonald would not clear title as requested by the Church. Thereafter, the Church filed this action to quiet title.

The District Court found that the Church was the record owner of all lots in question and voided the tax deed. Further, it granted a tax exemption on lots 10, 11 and 14, concluding that the other lots were not reasonably necessary for the convenient use of the church buildings. Also, the court determined that ingress and egress could be achieved by means other than the road on lots 6-9. This appeal followed.

The Church raises two issues for our consideration:

(1) Is the Church entitled to an exemption, as a religious institution, on all lots surrounding the church buildings?

(2) Did the District Court act without jurisdiction in disallowing exemptions previously granted by the Department of Revenue?

The Church contends that the land surrounding the church buildings is reasonably necessary for convenient use of the church buildings; thus, the Church is entitled to an exemption under section 15-6-201(1)(b), MCA. The land is used exclusively by the Church, the school ministries, and youth ministries for religious purposes. Ingress and egress is accomplished by the road which is on lots 6, 7, 8, and 9. A DOR witness testified that he had only been on the property twice but saw no activity. Consequently, the Church argues,

DOR failed to contradict the Church's evidence regarding the use of the property.

The Church also argues that the legislative enactment of the exemption for adjacent lands necessary for the convenient use of buildings indicates an intent to liberally construe the exemption statute.

DOR asserts that the tax exemption statutes must be strictly construed against exemptions and in favor of taxation. A tax exemption cannot be implied but must be expressed in clear, unambiguous language.

DOR recognizes that the church, parsonage and land on which they sit is exempt from property tax. However, the adjacent land does not fall under section 15-6-201, MCA, as it is not reasonably necessary for convenient use of the church buildings. DOR points out that all of the lots were unimproved and vacant, and no activity was ever witnessed on the property. Under rules of strict construction an exemption cannot be granted on such property.

Property tax exemptions for religious institutions are established in Art. VIII, Section 5, of the 1972 Montana Constitution, which reads in part:

> "Property tax exemptions. (1) The legislature may exempt from taxation:
>
> " . . .
>
> "(b) Institutions of purely public charity, hospitals and places of burial not used or held for private or corporate profit, places for actual religious worship, and property used exclusively for educational purposes.
>
> (c) Any other classes of property."

Section 15-6-201(1)(b), MCA, provides:

> "Exempt categories. (1) The following categories of property are exempt from taxation:

4

" . . .

> (b) buildings, with the land they occupy and furnishings therein, owned by a church and used for actual religious worship or for residences of the clergy, together with adjacent land reasonably necessary for convenient use of such buildings;"

Generally, property tax exemptions for religious institutions are strictly construed against the claimant. 71 Am.Jur. State and Local Taxation, § 381 at 688; Grace, Inc. v. Board of County Comm. (N.M.App. 1981), 639 P.2d 69; Yakima First Baptist Homes, Inc. v. Gray (1973), 82 Wash.2d 295, 510 P.2d 243; Board of Publication of the Methodist Church v. Oregon State Tax Commission (1964), 239 Or. 65, 396 P.2d 212; see also, other cases cited in 15 ALR2d 1064, 1065. This Court so held in Flathead Lake Methodist Camp v. Webb (1965), 144 Mont. 565, 399 P.2d 90, citing Town of Cascade v. Cascade County (1926), 75 Mont. 304, 243 P. 806, and Cruse v. Fischl (1918), 55 Mont. 258, 175 P. 878. However, Flathead Lake also recognized that each case must be viewed from a realistic standpoint, quoting language from a New York court:

> "'We must, as in all other judicial determinations, place in juxtaposition the two extremes of judicial interpretation. On the one hand is the policy of strict construction which frowns upon tax exemption. [Citing cases.] On the other hand, innocent collateral activities essential to the furtherance of the true purposes of the corporation should not blind the court to the genuineness of those purposes nor to the sincerity of their actual accomplishment.' [Citing cases.] 281 N.Y.S. 545 at page 546." 144 Mont. at 573, 399 P.2d at 95.

While strict construction of exemption statutes is the majority rule, the balancing approach adopted by this Court lays a foundation for construing our statute.

We construe the exemption statute to allow an exemption for the actual land that is the access roadway. It was

5

brought out in oral argument that because of the topography of the surrounding land, ingress and egress can only be achieved by the church access road, not by Wynne Avenue as determined by the District Court. This access road crosses lots 6, 7, 8 and 9. We find that roads for ingress and egress are certainly within the meaning of "adjacent land reasonably necessary for convenient use of such [church] buildings," stated in section 15-6-201(1)(b), MCA. Access to church buildings is necessary for the convenient use of such buildings.

We exempt only the land on which the roadway sits, adhering to the policy of strict construction of tax exemption statutes. The balance is swung toward strict construction rather than a more permissive interpretation since the property is largely undeveloped and the use thereof is not clearly evident nor documented. Hence, it is difficult to ascertain whether such use is essential to the furtherance of the true purposes of the Church. Our holding is strictly limited to the facts of this case and does not foreclose other religious institutions from asserting tax exemptions on property adjacent to church buildings.

The Church also asserts that the District Court had no jurisdiction to remove exemptions on lots previously exempted by DOR. The tax exempt status of those lots was not involved in the litigation and DOR did not challenge such status.

DOR argues that the exempt status of the lots was raised by the Church and thus became subject to litigation.

A District Court does not have jurisdiction to grant relief outside of the issues presented by the pleadings unless the parties stipulate that other questions be considered or the pleadings are amended to conform to the

6

proof. Heller v. Osburnsen (1973), 162 Mont. 182, 510 P.2d 13, National Surety Corp. v. Kruse (1948), 121 Mont. 202, 192 P.2d 317; Welch v. All Persons (1927), 78 Mont. 370, 254 P. 179; Wallace v. Goldberg (1925), 72 Mont. 234, 231 P. 56. In National Surety Corp., this Court recognized that "[t]he rule in Montana as well as in other jurisdictions seems to be well settled that a judgment must be based on a verdict or findings of the court and must be within the issues presented to the court." 121 Mont. at 205-206, 192 P.2d at 319. (Emphasis added.) This rule was clearly upheld in Heller, 162 Mont. at 288, 510 P.2d at 16.

We hold the District Court had no jurisdiction to remove the exempt status originally granted by DOR. In this case the original action was to quiet title on lots 6, 7, 8 and 9, as the tax deed clouded the Church's title. As previously mentioned, the Church alleged that the tax deed was void since no delinquency occurred because the property should have been tax exempt. Therefore, the issues of the action embraced lots 6 through 9. The exemption granted on lots 10 through 16 by DOR was acknowledged in its answer. DOR's prayer for judgment specifically asked that the nonexempt status and subsequent assessment on lots 6 through 9 be affirmed. Lots 10 through 16 were not mentioned. Finally, the Church's application for a writ of prohibition only dealt with the tax assessment on lots 6 through 9, not lots 10 through 16.

The above facts regarding the pleadings indicate that the tax exempt status of lots 10 through 16 was never brought into this litigation. Rather, the essence of the action was the validity of the tax deed which depended, in part, on the tax status of lots 6 through 9. Consequently, the District

7

Court acted without jurisdiction in removing the exemption status of lots 10 through 16.

The judgment is reversed as to lots 10 through 16. The judgment as to lots 6 through 9 is vacated and remanded to the District Court for determination of the actual, physical dimensions of the access road for tax exemption, which would refer back to time of acquisition. The remainder of the judgment is affirmed.

_____
                Chief Justice

We concur:

_____

_____

_____

_____
        Justices

_____
Honorable John M. McCarvel,
District Judge, sitting in place
of Mr. Justice Frank B. Morrison, Jr.

8

Mr. Justice John C. Sheehy, dissenting:

I dissent from this improper and unworkable decision relating to the exemption of church-related property.

The majority admit that Rev. Gary Miller, pastor of the church, testified that the property was purchased for convenience and usage and all of the property was used by the school ministry and youth ministry for religious services and fellowship.

The majority have ignored that language in determining that a portion of the church property must be taxed.

This is the testimony which bears on the question:

"Q. I believe that you testified during the course of a direct examination that those particular lots were used for picnics, hayrides, tobogganing and activities of that sort, is that correct? A. (Rev. Miller) Yes, related to our ministries, our youth ministries, our school ministry . . .

". . .

"THE COURT: You have a road and you have a baseball diamond on 6, 7 and 8 and 9. There is a road in all three or four.

"THE WITNESS: The road has to be on all of them but maybe 6. That's not vacant. Its used everyday."

In contrast, the Department of Revenue employee testified that he had been on the premises only twice, not on a day when church or school activities were going on, and that he had no direct knowledge of any kind as to the use of the lots with respect to the church ownership.

Lots 6 through 9, and lots 10 through 16 are all used as one unit, and are enclosed in a common fence. There is a baseball diamond located on lots 6 through 9, as well as a roadway which the majority have seen fit to exempt from

taxation. The evidence is that the recreational portion of lots 6 through 9 in connection with the school ministry.

This case should be controlled by Flathead Lake Methodist Camp v. Correan M. Webb, County Treasurer, (1965), 144 Mont. 565, 399 P.2d 90. In that case, this Court held that that portion of church property used for recreational purposes in connection with its religious educational purposes was entitled to exemption from taxes. I see no difference in the situation existing here, particularly where the testimony indicates that the property is used "everyday" in connection with the ministry of the church.

This case sets a dangerous precedent. Now all church properties will be examined by the Department of Revenue, and those portions of the their properties which are not in active use on the two days the Department of Revenue may come by to observe will be subject to taxation.

The real question in cases like this should be whether the church is attempting to gain an exemption for more land than is necessary for its purposes. No such situation exists here. I therefore dissent.

John C. Sheehy
_____
Justice