MR. JUSTICE SHEEHY,
dissenting:
The issue in this case is the validity of the academic eligibility requirement for participation in extracurricular activities in High School District No. 1, Lewis and Clark County, Montana, as follows: “Academic Eligibility. To be eligible to participate in a Montana High School Association contest a student must have received a passing grade in at least twenty periods of prepared work per week or its equivalent during the last preceding semesters in which he/she was in attendance. If a student is assigned an ‘incomplete’ in a subject, he/she has not received a passing grade in this subject. The record at the end of the semester is final and scholastic deficiencies may not be ‘made up’ in any way.
“In addition, Helena School Dist. #1 High School activity participants (including Athletics, Band, Vocal, Speech, Drama, Cheerleaders, Drill Team, Student Council, Class and Organizational Officers), must have a 2.0 grade point average the previous semester. If not in conflict with Montana High School Association policy, a student will have two (2) weeks to make up an incomplete.
“Further, Helena School Dist. #1 High School activity participants must be present the entire day to compete or practice unless permission is granted through the Principal’s office.”
On July 22, 1985, the respondent Board of Trustees enacted the following amendment to the academic eligibility requirement:
“If the grades of a student who is participating in activities falls below a 2.0 grade point average for any nine week grading period the student will be ineligible to participate in activities during the next nine week grading period. The policy change will be retroactive to the 1984-85 spring quarter.”
[NOTE: School Board grammar, not mine.]
Under the agreed statement of facts before this Court, 1) extracurricular activities mean activities which do not earn credit toward *281 graduation; 2) a 2.0 grade point average is a “C” average; 3) the rule sets a high standard which is required for graduation from Helena high schools — whereby in order to graduate, a student must obtain 21 credits by receiving a grade of “D” or better in 21 courses. Participation by Helena high school students in interscholastic activities in Montana, for Class AA schools (both Helena high schools are Class AA schools) is allowed under the rules of Montana High School Association for students who receive a passing grade “D” in at least 20 periods of prepared work per week. None of the other Class AA schools, 14 others, require more than a “D” passing grade for participating in interscholastic activities.
Colleges, on paper at least, have higher standards for intercollegiate competition. The National Collegiate Association rule requires a 2.0 grade point average for a student to be eligible for practice, participation in regular season competition, and financial aid.
The single issue in this case is the constitutional validity of the academic requirement rule for participation in extracurricular activities adopted by the Helena High School District.
Until today, this Court had followed the rule that a student’s right to participate in extracurricular activities was constitutionally protected. To be sure, that was not the majority rule among the several states, but in Montana, we held unswervingly to that rule, based on our special constitutional provisions and the interpretation of this Court in McNair v. School Dist. No. 1 (1930), 87 Mont. 423, 288 P. 188.
In McNair, a Cascade County taxpayer attacked the validity of a bond issue proposed by School District No. 1 of that county “for the purpose of constructing an outdoor gymnasium and athletic field in said district, furnishing and equipping the same.” McNair attacked the proposed bond issue on the grounds that the 1889 Constitution did hot contemplate athletic fields, and that the statute which permitted the erection of gymnasiums did not include athletic fields. The 1889 Constitution provided that the duty of the legislature was to establish and maintain “a general, uniform and thorough system of public, free, common schools.” In construing what a “thorough system” meant, this Court said:
“What, then, constitutes a ‘thorough’ system of education in our public schools? By its voluntary act, the state has assumed the function of education primarily resting upon the parents, and by laws on compulsory education has decreed that the custody of children be yielded to the state during the major portion of their waking hours *282 for five days of the week, and, usually, nine months in the year. In doing so, the state is not actuated by motives of philanthropy or charity, but for the good of the state, and, for what it expends on education, it expects substantial returns in good citizenship. With this fact in mind, it is clear that the solemn mandate of the Constitution is not discharged by the mere training of the mind; mentality without physical well-being does not make for good citizenship — the good citizen, the man or woman who is of the greatest value to the state is the one whose every faculty is developed and alert.
“Education may be particularly directed to either mental, moral or physical powers or faculties, but in its broadest and best sense it embraces them all. (Emphasis added.)”
87 Mont, at 428, 288 P. at 190.
Following McNair, we had the case of Perkins v. Trask, (1933), 95 Mont. 1, 23 P.2d 982. This was an action against the members of the School Board for the drowning death of a pupil in a swimming pool maintained by the School District of Powell County. The trustees of the School District were immune from suit if they were performing a governmental function, and it was the contention of the plaintiff that because the trustees had no authority to construct a swimming pool, they were individually liable. In disposing of the argument that the trustees were not engaged in a governmental function, this Court said:
“Our Constitution imposes the duty upon the legislative assembly “to establish and maintain a general, uniform and thorough system of public, free, common schools.’ (Section 1, Article XI.) This the legislature has done by the enactment of our school laws. The courses of study are prescribed by Section 1054, Revised Codes of 1921, with power in the boards of trustees ‘to determine what branches, if any, in addition to those required by law, shall be taught in any school in the district.’ [citing authority]. Also by Chapter 147, Laws 1927, the trustees are given authority to issue bonds for the purpose of constructing or acquiring a gymnasium and for furnishing and equipping the same. (Section 1) Under the broad rules announced in McNair v. School District, 87 Mont. 423, 288 P. 188, 69 A.L.R. 866, the trustees have authority to construct and maintain a swimming pool for the use of the pupils.
“It is also contended that, if the board has the right to maintain a swimming pool, its right is optional and not mandatory, and hence
*283 the rule of immunity does not apply. This fact does not alter the legal principle applicable, (citing authority).”
95 Mont, at 7-8, 23 P.2d at 984.
Thus did our Court hold that a swimming pool in a school was a performance of an educational duty by the school trustees.
In Flathead Lake Methodist Camp v. Webb (1965), 144 Mont. 565, 399 P.2d 90, the question was whether the Methodist Church was entitled to a Montana property tax exemption for the maintenance of a summer camp on Flathead Lake in Lake County. The tract involved and consisted of 22 acres on which the Methodist congregations had erected cottages, dormitories, dining rooms, bathing facilities, garages, boat dock, water supplies, etc. Webb maintained that the church was not entitled to a tax exemption for the property which was used for educational purposes. This Court said:
“Our review of the record leads us to the conclusion that the ‘exclusive’ use of the premises is for ‘educational purposes’ within the meaning of the statute. The term ‘educational purposes’ is not, by the weight of authority, defined in terms of the common scholastic institutions of grammar school, high school, and university or college. (Citing authority.) Organizations for the social, intellectual, physical, or religious welfare of children are exempt equally. The end of education may be to develop either the mental, physical, or moral qualities. (Citing authority.) Religious education is exempt as an ‘educational purpose’.
“Our court has stated: ‘Education may be particularly directed to either mental, moral, or physical powers or faculties, but in its broadest and best sense it embraces them all.’ McNair v. School Dist. No. 1 of Cascade County, 87 Mont. 423, [428,] 288 P.2d 188, 190, 69 A.L.R. 866. (Emphasis added.)”
144 Mont, at 569, 570, 399 P.2d at 93.
Then came Granger v. Cascade County School Dist. (1972), 159 Mont. 516, 499 P.2d 780. In that case Cascade County School District had imposed fees in the grade school and high school for such items as workbooks, chemistry notebooks, manual arts materials, musical instrument rentals, summer school, and others. The fees were attacked by the plaintiffs on the grounds that the constitutional requirement of a “thorough system” of public, free schools encompass all categories of activities in the school and no such fees can be imposed. There this Court reaffirmed its statement that edu *284 cation may be directed to mental, moral and physical powers, and provided this test:
“Is a given course or activity reasonably related to a recognized academic and educational goal of the particular school system? If it is, it constitutes part of the free, public school system commanded by Article XI, Section 1 of the Montana Constitution and additional fees or charges cannot be levied, directly or indirectly, against the student or his parents. If it is not, reasonable fees or charges may be imposed.”
159 Mont, at 516, 527, 499 P.2d at 706.
In addition, the federal district court in Montana construed our holding in McNair and its following cases as granting a constitutionally protected right to participate in extracurricular activities. In Moran v. School Dist. No. 7, Yellowstone County (D. Mont. 1972), 350 F.Supp. 1180, the federal court, recognizing the holding in McNair, stated:
“In relying on this case the present Montana Supreme Court has recognized the importance of extracurricular activities as an integral part of the total education process. Courts have begun to recognize that extracurricular activities such as football are ‘generally recognized as a fundamental ingredient in the education process.’ Kelly v. Metropolitan County Board of Education of Nashville, etc., 293 F.Supp. 485, 493 (D.C. 1968). See also Lee v. Macon County Board of Education, 283 F.Supp. 194 (D.C. 1968). Thus it is apparent that the right to attend school includes the right to participate in extracurricular activities. (Emphasis added.)”
350 F.Supp. at 1184.
In brief and in oral argument, the School Board concedes that extracurricular activities are “a fundamental ingredient of the educational process,” but, without further explanation contends that the “fundamental ingredient” is not constitutionally protected. Some may distinguish a fundamental ingredient from a fundamental right, but it takes a quantum jump.
Thus, it was the law in this state until today that participation in extracurricular activities was a fundamental ingredient of the educational process; that school boards which issue bonds or otherwise finance through taxpayers the erection of athletic fields and gymnasiums or other provisions for extracurricular activities do so as part of the educational process; and that fees cannot be charged by the School Board if a given course or activity is reasonably related to recognized academic or educational goal. That was the state of the *285 law when the constitutional framers in 1972 in the new constitution adopted Article X, Section 1, which provides:
“(1) It is the goal of the people to establish a system of education which will develop the full educational potential of each person. Equality of educational opportunity is guaranteed to each person of the state.”
We have been shown no record from the 1972 Constitutional Convention that would indicate that the constitutional framers wanted to divert extracurricular activities in schools from the other educational goals. Indeed, the language used by the constitutional framers in 1972 seems to encompass physical development in the term “educational potential.” For this must be true, if nothing else is, that the end of our educational system must be to develop students physically, mentally and morally to meet the challenges of life.
Of the approximately 2,500 students attending both Helena high schools, more than 500 of them, with the approval of this Court, are ousted by the eligibility rule from any extracurricular activities. If these students found little to relish in classrooms heretofore, their tedium will never be relieved by the sweet mix of association with their peers in other school endeavors, now branded as “nonessential” — drama, debate, cheerleading, drill team, student government, class and/or organizational officers, and yes, interscholastic track, football, basketball and golf. It is now possible for a student to graduate from either of Helena’s high school without ever being eligible for any extracurricular activity!
We have never had before us a scheme of government so patently discriminatory. This Court has followed convoluted equal protection analysis ad absurdum to a silly result. Now a Helena High School girl with a 1.98 grade average and a good soprano voice is excluded from singing with the Helena Starlighters. A Gary Cooper or a Myrna Loy, both Helena products, may now be excluded from the Helena drama classes. A student can sign up for Spanish, but that student cannot belong to the Spanish Club, even with a passing grade in Spanish if his or her overall average is less than “C.” In any test of fair dealing, those results should instantly be held irrational, but this Court does not want to apply rationality standards. It wants to talk about strict scrutiny and middle term reviews to deny these students perhaps the only time in their lives to use their God-given skills to run in track, to twirl batons, to play in bands.
We should not resort to high-flown concepts of equal protection law, which are with us today and tomorrow are gone with the wind, *286 to deny constitutional protection to these affected students. Even if we reverse this Court in its prior decisions by holding that no fundamental right is involved, or by holding that we do not have an inherently suspect class, equal protection still requires that the rule be rationally related to a legitimate state interest. Sullivan v. University Interscholastic League (Tex. 1981), 616 S.W.2d. 170.
The only stated purpose for the rule set out in the agreed statement of facts is that the rule is “to encourage higher academic achievement to students who wish to participate in extracurricular activities.” A rule which places physical, educational and moral development below mental education slaps at the three legs upon which the educational stool is built.
This rule is not rationally related to its object for two reasons: it is guilty of bad breadth, and it is not rationally related to its intended purpose.
When I say bad breadth, I mean that this rule is so overbroad that it must eventually be modified by the School District trustees, and indeed it has already been modified once. Its intended purpose, to encourage greater academic achievement, is not supported by any evidence in the agreed statement of facts or otherwise. It is built more on wish than fact. No rational relationship has been shown.
It is noteworthy that the exclusion of high school students from extracurricular activities is so drastic that it is one of the punishments allowed to trustees for students who show open defiance of authority, deface school buildings or threaten other persons. Section 20-5-201, MCA. Thus has the School Board placed students who earn a grade point average of less than 2.0 in the category of the rebellious and defiant. It is patently irrational.
MR. JUSTICE HUNT, concurs in the dissent of MR. JUSTICE SHEEHY.