## MACFARLAND v. ELVERSON.

EMINENT DOMAIN; MUNICIPAL CORPORATIONS; STATUTES.

1. Statutes providing for the condemnation of private property for public
   use must be construed strictly, and, if doubts exist as to the authority
   to proceed under such a statute, such doubts must be resolved in favor
   of the property owner.

2. When the power to condemn property for public use is conferred by
   statute upon municipal officers, it is within their power to determine
   when a public improvement is necessary, and, so long as they do not
   exceed or abuse such power, the courts are powerless to inquire into
   the motives which actuate them, or the propriety of the contemplated
   improvement.

3. The punctuation of a statute may be resorted to in its interpretation,
   although it affords an uncertain standard by which to do so.

4. In sec. 483, D. C. Code (31 Stat. at L. 1265, chap. 854), providing for
   the condemnation of land in this District when it is needed for the
   "use of the United States, or by the commissioners of the District
   for sites of schoolhouses, fire or police stations, or for a right of way
   for sewers, or for any other municipal use authorized by Congress,"
   the words "authorized by Congress" limit only the words preceding
   them in the same phrase, "or for any other municipal purpose," and
   have no reference to the preceding phrases; so that the commission-
   Vol. XXXII.—6.

ers have the right to institute and prosecute proceedings to condemn land for sewer purposes without express direction of Congress to do so.

5. It would seem that sec. 483, D. C. Code, which provides for the institution and prosecution by the commissioners of this District of proceedings to condemn land for sewer and other purposes, is intended to relate, so far as sewers are concerned, to trunk sewers, as surface sewers under other laws are required to be constructed in streets and alleys where no condemnation of land for the right of way is necessary.

6. Where land is sought to be condemned for sewer purposes by proceedings instituted by the commissioners of the District of Columbia under sec. 483, D. C. Code, the fact that no appropriation has been made by Congress to pay for the land sought to be condemned at the time of the institution of the proceedings, is immaterial. (Construing D. C. Code, secs. 483, 486, and 491.)

No. 1895. Submitted October 14, 1908. Decided November 4, 1908.

HEARING on an appeal by the commissioners of the District of Columbia, the petitioners in a proceeding to condemn land, from a judgment of the Supreme Court of the District of Columbia dismissing their petition, and vacating the proceedings which had been had thereunder.                    *Reversed.*

The COURT in the opinion stated the facts as follows:

The record in this case discloses that the appellants, the commissioners of the District of Columbia, plaintiffs below, filed a petition on October 7, 1907, in the supreme court of the District of Columbia seeking to condemn a right of way for the construction of a trunk sewer between Wisconsin avenue and Rock creek, north of "T" street, as the same appears on the street-extension plan of the city of Washington. The line of the proposed sewer is not along any street, but extends chiefly through private grounds. On the same day that the petition was filed, a citation was issued citing the persons interested to appear and answer the petition before the 28th day of October, 1907. Personal service of the citation was made by the marshal upon all persons therein named who could be found in the District of Columbia, and service was also made by publication, as

required by law. On October 29, 1907, the court made an order appointing three commissioners to appraise the value of the respective interests of the persons concerned in the land proposed to be taken under the condemnation proceedings. The commissioners qualified on October 31, and, on November 1, notice of hearing before the commissioners was given, fixing the date of the hearing for the 13th and 14th days of November, at the United States courthouse in this District.

On November 16, 1907, the counsel for appellee, James Elverson, appeared specially and protested against the jurisdiction of the commissioners to proceed further under the order of the court, on the following grounds:

"First: No such notice of intention to appoint said commissioners to condemn said lands as is required by the statute in such case made and provided was given to said James Elverson.

"Second: Said commissioners are without lawful authority to proceed to appraise the value of the right of way for the projected trunk sewer through said parcel, or to assess either damages or benefits on account thereof, because, (a) of the failure to give such notice as above specified, (b) of the absence of any statutory authority providing for the appointment of said commissioners.

"Third: The supreme court of the District of Columbia was without jurisdiction and authority to appoint said commissioners because (a) of insufficiency of notice in so far as the lands belonging to said James Elverson is concerned, (b) of the absence of any statute whatsoever authorizing the appointment of commissioners for the purpose of condemning such lands for the right of way of the sewer in question."

Thereafter, appellee, by his attorneys, appeared specially, and moved the court, after enumerating the grounds of objection substantially as set forth in the above protest, to issue a rule addressed to the commissioners of the District of Columbia to show cause, on a day convenient to the court, why the order heretofore made should not be rescinded and the petition dismissed. Within the time allowed, plaintiffs made their return to the rule, alleging that said petition was filed under the general au-

thority conferred upon the commissioners of the District of Columbia to condemn land for a right of way for sewers under sec. 483 of the Code of the District of Columbia (31 Stat. at L. 1265, chap. 854) ; that, according to the provisions of the act of Congress of June 11, 1878 (20 Stat. at L. 104, chap. 180), they submitted to the Secretary of the Treasury estimates for appropriations necessary for the fiscal year ending June 30, 1908, which included $150,000 for suburban sewers; that this item for suburban sewers was submitted as a whole, in accordance with a long-established practice in submitting such estimates; that the Secretary of the Treasury approved and transmitted to Congress the estimate so submitted, and that Congress appropriated for suburban sewers the sum of $100,000. In the return, plaintiffs further alleged that the commissioners filed their petition herein, after being advised that the appropriation of Congress for the construction of suburban sewers authorized them to construct such sewers to the extent of said appropriation, and that, under the authority of the said appropriation, and the provisions of section 483 of the District Code, they undertook, as they were advised it was their duty to do, to acquire the right of way for the sewer here in question.

To this return, appellee filed a special demurrer, in words as follows: "That, as fully appears from respondents' return to said rule to show cause, that neither the project of acquiring a right of way for a sewer through the parcel of land called Clifton, or elsewhere, nor the estimated cost thereof, has been submitted to the Secretary of the Treasury in detail as required by law, and no appropriation for such purpose has ever been made by the Congress, nor has the acquisition and use of such a right of way been authorized by the Congress; and, in the absence of the submission of such an estimate to the Secretary of the Treasury for his approval, or the making of such appropriation and the authorization of such acquisition and use by the Congress, said respondents are without lawful power to maintain these proceedings. Wherefore, your orator says that the order entered herein by this honorable court on or about the 29th day of October A. D., 1907, appointing commissioners to assess damages

and benefits in connection with the condemnation of a right of way through said tract or parcel of land known as Clifton, should be revoked and held for naught."

On March 2, 1908, the court entered a decree sustaining the demurrer to the return, and, the plaintiffs electing to stand upon their return, the court, by the same decree, dismissed the petition and held the proceedings thereunder for naught. From this judgment the appellants prosecute this appeal.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. James F. Smith,* Assistant, for the appellants.

*Mr. Frederick E. Chapin* and *Mr. Frederic D. McKenney* for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The appeal is based on the following assignments of error:

"The court erred in sustaining the demurrer of the  appellees to return to the rule to show cause aforesaid.

"The court erred in dismissing the petition filed herein and the proceedings subsequent thereto."

The issue before us narrows itself to the proper construction to be placed upon sec. 483 of the Code of the District of Columbia. This section is as follows:

"Sec. 483. Whenever land in the District is needed for the use of the United States, or by the commissioners of the District for sites of schoolhouses, fire or police stations, or for a right of way for sewers, or for any other municipal use authorized by Congress, and the same cannot be acquired by purchase from the owners thereof at a price satisfactory to the officers of. the government authorized to negotiate for the same, application may be made to the supreme court of the District by petition in the name of the United States or of said commissioners, as the case may be, for the condemnation of said land or said right of way and the ascertainment of its value."

It is well established that statutes providing for the condem-

nation of private property for a public use must be strictly con-
strued. If any doubts exist as to the authority to proceed under
such statutes, these doubts must be resolved in favor of the per-
son whose property is sought to be taken. The power to con-
demn private property for a public use is one commonly con-
ferred upon municipal corporations. Hence, if Congress has
here seen fit to confer upon the commissioners of the District of
Columbia this power, it would be rather in accord with, than an
exception to, the usual custom.

When the power to condemn and take property for a public
use has been by general statute conferred upon municipal of-
ficers by the proper legislative authority, it rests with such of-
ficers to determine whether it shall be exercised, and when and
to what extent it shall be exercised. This discretion lies entirely
with the local authorities. It is for them to determine when a
public improvement is necessary, and, so long as they do not ex-
ceed or abuse the power delegated to them, the courts are power-
less to inquire into the motives which actuate them or the pro-
priety of the contemplated improvement. Chapter 15 of the
Code of the District provides a complete process by which the
commissioners of the District, in certain instances, may acquire
private lands for the public use. It is contended, however, by
counsel for appellee, and so held by the court below, that this
power can be exercised by the commissioners only when special-
ly authorized by Congress. In other words, it is insisted that
no discretion has been lodged in the commissioners by sec. 483,
and that they can only act when directed by Congress in each
particular case. Appellants insist that, in the case of sites for
schoolhouses, fire or police stations, or for a right of way for
sewers, the commissioners have authority to proceed to con-
demn such lands as they may deem necessary, without further
authority from Congress; and that, as to these particular uses,
Congress has delegated full power to the commissioners.

This brings us to an interpretation of the provisions of sec.
483 of the Code. It provides that the commissioners may con-
demn lands for "sites of schoolhouses, fire or police stations, or
for a right of way for sewers, or for any other municipal use

authorized by Congress." Counsel for appellee contends that
the words, "authorized by Congress," limit all that precedes
them, and that the commissioners have only power to condemn
when Congress has authorized them to acquire a particular site
for a schoolhouse, fire or police station, sewer, or other municipal
purpose. Counsel for appellants contend that the words, "au-
thorized by Congress," limit only the words preceding them in
the same phrase, "or for any other municipal purpose," and have
no reference to the preceding phrases. With appellants' conten-
tion, we agree. It is an ordinary rule of statutory construc-
tion that in a case like this the exception is confined to the last
antecedent. (*Com.* v. *Kelley,* 177 Mass. 221, 58 N. E. 691.)
We are materially assisted by the punctuation of the statute.
The use of a comma after the general expressions, and before
the special phrase in which the words, "authorized by Congress,"
are used, clearly indicates an intention on the part of Congress
to confer upon the commissioners full power and discretion in
the condemnation of land for sites for schoolhouses, fire or police
stations, and for a right of way for sewers, reserving to itself
the discretion and power to direct as to all other municipal pur-
poses. While the punctuation in this case may be of material
assistance in ascertaining the intention of Congress, we recog-
nize the uncertainty of this rule of interpretation. As said in
*Ewing* v. *Burnet,* 11 Pet. 41, 9 L. ed. 624: "Punctuation is a
most fallible standard by which to interpret a writing; it may be
resorted to when all other means fail; but the court will first
take the instrument by its four corners, in order to ascertain its
true meaning; if that is apparent, on judicially inspecting the
whole, the punctuation will not be suffered to change it." Ex-
amining closely the statute before us, we find that the contention
of appellee leads to an ambiguity of expression on the part of
Congress. If he is correct, why the necessity of mentioning in
the statute "sites of schoolhouses, fire or police stations, or for
a right of way for sewers?" The statute would have been com-
plete to have read: "Whenever land in the District is needed
for the use of the United States, or by the commissioners of the
District for any municipal purpose authorized by Congress, and

the same cannot be acquired by purchase," etc.   The portion of
the statute enumerating the purposes for which condemnation
of land may be made consists of four separate and distinct
phrases, each designating, complete within itself, an instance in
which the commissioners may act.   In the first three, no limita-
tion is placed upon the power of the commissioners.   In the
fourth, Congress reserves to itself the power to direct when and
where the authority of the commissioners may be exercised.   A
case closely analogous to the one here under consideration is
that of *Tyrrell* v. *New York,* 159 *N.* Y. 239, 53 N. E. 1111,
where the court was considering a statute providing for the
compensation of various classes of officers and employees.   The
language used in the statute was, in part, as follows: "The an-
nual salaries and compensations of the members of the uni-
formed force of the department of street cleaning   *   *   *
[especially fixed by the board of estimates] shall not exceed the
following:   Of the general superintendent, $3,000; of the as-
sistant superintendent, $2,500;   *   *   *   of the master
mechanic, $1,800; of the time collectors, $1,200 each; of the
section foremen, $1,000 each; of the hostlers, $720 each, and
extra pay for work on Sundays."   It was contended that the
words, "extra pay for work on Sundays," related to all the
previously enumerated employees, but the court held that it re-
lated only to the class mentioned in the particular phrase in
which it was used.

It will be observed that the provision of the statute relating
to sewers is general.   It makes no distinction between trunk and
service sewers.   It reposes in the commissioners full discretion,
not only as to the necessity for sewer construction, but as to their
location.   It would seem that a general act of this kind was in-
tended more especially to relate to trunk sewers, since it appears
that service sewers, under the law in force in the District, are re-
quired to be constructed in streets and alleys, where no con-
demnation of land for the right of way is necessary.

This brings us to the second and minor contention of ap-
pellee that no appropriation had been made by Congress to pay
for the lands here sought to be condemned. . It is unnecessary to

pass upon the question of whether or not the commissioners could have used any part of the $100,000 then appropriated and available for the construction of suburban sewers for the payment of the right of way here sought to be condemned. The time had not come in the course of these proceedings when appellants could be called upon to answer that question. It is to be presumed that appellants would not have instituted condemnation proceedings unless they had the money to pay for the property taken. They would hardly have undertaken a useless thing. If they had not the money with which to make such payment, it is difficult to understand just how the appellee could be damaged. He could not be devested of his property until payment had been made. D. C. Code, sec. 486 (31 Stat. at L. 1266, chap. 854). The question of ability to pay was not one that could be properly raised until after the award had been made by the commissioners appointed to make the appraisement, the confirmation thereof by the court, and its acceptance by the commissioners of the District. These proceedings were stopped before the award was made. After award and confirmation, it would have been optional with the commissioners to pay the award and take title to the land for the District, or to elect not to take the property at the price named by the appraisers. D. C. Code, sec. 491. It is immaterial at the present stage of this inquiry, whether there was money available or not for the payment of an award that might have been made by the appraisers, that might have been confirmed by the court, and that might have been accepted by the commissioners of the District. The ability of the commissioners to pay was something with which no one was concerned until they had elected to abide by the verdict of the appraisers, and even then the title of appellee would have been secure until full payment had been made. The mere fact that no appropriation has been made to pay for land sought to be taken under the provisions of the Code at the time the condemnation proceedings for that purpose are instituted is no argument in favor of the contention that funds will not be available for such payment when the time arises in the due course of the proceedings when the proper authorities may

be called upon to make such payment. It is not the kind of a contingency that should invoke the conjecture of the court.

The judgment will be reversed, with costs, and the cause remanded, with instructions to proceed in accordance with the views expressed herein.                              *Reversed.*