**D. C. FEDERATION OF CIVIC ASSO-CIATIONS et al., Plaintiffs,**

**v.**

**Thomas F. AIRIS et al., Defendants.**

**Civ. A. No. 3174–66.**

United States District Court
District of Columbia.

Oct. 18, 1967.

See also D.C., 275 F.Supp. 540.

Roberts B. Owen and Gerald P. Norton, Washington, D. C., for plaintiffs.

Thomas McKevitt, Dept. of Justice, Washington, D. C., for Federal defendants.

John A. Earnest and Patrick O'Donnell, Assts. Corporation Counsel, Washington, D. C., for District of Columbia defendants.

## OPINION

HOLTZOFF, District Judge.

This is an action brought by a large number of plaintiffs of different kinds and types, joined together to restrain District of Columbia highway authorities and Federal highway authorities from proceeding with the construction of four projects with Federal highway aid. The four projects consist of three highways or freeways within the boundaries of the District of Columbia and a bridge across the Potomac River, generally known as the Three Sisters Bridge. A declaratory judgment is also asked, adjudging the illegality of the steps being taken by the authorities. The matter is before the Court on cross motions for summary judgment.

■■ At the outset it must be emphasized that the wisdom, the policy, the expediency and the desirability of governmental action, be it action of Congress

or action of the Executive, are not subject to review by the judiciary. The courts are not a supervisory branch of the government. Otherwise, one of the fundamental principles of our popular institutions, namely, separation of powers and the tripartite division of government, would be completely destroyed and the final powers of government would be transferred to the judiciary. This is not what the Founding Fathers contemplated or intended to create. Were the judiciary to be superior to the other branches of the government and were the judiciary clothed with power to set aside governmental action with which it did not agree or which it did not approve, we would cease to have a popular form of government.

■ The power of the judiciary is limited to redressing individual legal rights. The courts may step in only if a private right of some individual, distinguished from the rights of the public as a whole, is being infringed either by another individual or by the government. It is for this reason that the courts have evolved the doctrine that in order to maintain an action to set aside some activity of the government, the plaintiff must have a standing to sue, namely, that his own individual private rights that are recognized by law are being encroached upon or infringed by governmental action. In other words, the requirement of a standing to sue is not a mere matter of procedure but is a fundamental principle of substantive law, that must be maintained in full vigor in order not to weaken the structure of our free institutions.

Mr. Justice Black, in Perkins v. Lukens Steel Co., 310 U.S. 113, 132, 60 S.Ct. 869, 879, 84 L.Ed. 1108, in holding that the plaintiffs in that case did not have standing to sue, said:

"Our decision that the complaining companies lack standing to sue does not rest upon a mere formality. We rest it upon reasons deeply rooted in the constitutional divisions of authority in our system of Government and the impropriety of judicial interpreta-

tions of law at the instance of those who show no more than a mere possible injury to the public."

■ We, therefore, must first consider which if any of the numerous plaintiffs in this action have a standing to sue. It is well settled and was established definitively by the Supreme Court in Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078, that a person may not maintain a suit against Federal officials to enjoin expenditure of Federal funds claimed to be illegal merely because of his status as a taxpayer or as a citizen, unless his personal private legal rights, separate and apart from those of the public, are invaded. There is an old exception to this doctrine in respect to municipal corporations. Many jurisdictions in this country permit a taxpayer of a municipality to bring suit to enjoin an illegal expenditure of municipal funds. This doctrine has been adopted in the District of Columbia in Roberts v. Bradfield, 12 App.D.C. 453. The Supreme Court in the *Frothingham* case, 262 U.S. at page 486, 43 S.Ct. 597, recognizes this exception and refers to Roberts v. Bradfield as being the law of the District of Columbia, without approving or disapproving it, although it expressly states that there are decisions in other jurisdictions to the contrary. Under the circumstances, the Court recognizes it to be the law of the District of Columbia Circuit that a taxpayer of the District of Columbia may maintain suit in order to restrain the expenditure of municipal funds for an object claimed to be illegal or in a manner claimed to be unlawful. This doctrine, however, does not extend to the Federal Government and, consequently, such an action may not be maintained as against Federal officials but must be solely restricted to District of Columbia officials.

■ With these principles in mind, we must consider the various classes and categories of plaintiffs in this action. Taking them more or less in order, there are first a number of civic associations. This Court is of the opinion that they have no standing to sue. There are a

number of property owners, who assume that efforts will be made to condemn their property by eminent domain for the projects under consideration. They have an adequate remedy at law by contesting the condemnation proceeding, if and when one is brought. They have no valid claim to equitable relief at this stage. There are property owners among the plaintiffs who own property the value of which may be reduced by the projects involved in this action. They have no standing to sue because they have no legal personal rights that are being adversely affected. Some of the individual plaintiffs claim to be users of public parks within the area of the projects and they contend that their rights to use the parks will be interfered with. They have no rights separate and apart from those of the rest of the public and they have no standing to sue.

The Court deplores the fact that one of the plaintiffs is the Central Committee of the District of Columbia of one of the two major political parties. Obviously, the committee, presumably not being incorporated, is not an entity and has no capacity to sue or be sued. The main objection is not only that it has no capacity or standing to sue but that it was inappropriate by this indirect means to bring before the Court what seem to be political considerations. The committee should not have lent its name and counsel should not have used it for that purpose. The Court might make the observation that it is confident that neither the committee nor counsel realized the full implications of naming a political committee as a litigant in this court in matters that do not affect the committee individually. This course was, however, inappropriate and indiscreet.

None of the classes of plaintiffs so far enumerated have a standing to sue and the action will be dismissed as to them. There remain a number of plaintiffs who sue as District of Columbia taxpayers. They have a standing to sue under the doctrine to which the Court has referred and the action will proceed as to them, limited, however, as against the District of Columbia defendants and not extending to the Federal defendants, because the latter are not subject to suit at the behest of persons suing solely as taxpayers and not asserting any individual private rights.

The issues to be considered by the Court are merely whether the steps being taken by the District of Columbia authorities infringe any legal right of the plaintiffs and whether the District of Columbia defendants are acting within the law. If they are not taking any step forbidden by law, if they are acting in accordance with law, then the case should be determined in their favor. To repeat, the Court is not concerned and has no authority to consider the merits of the projects involved in this action. That is entirely and solely for the consideration of the Legislative and Executive branches of the Government.

In view of the complexity of the issues, the Court determined to hold two separate hearings; the first, as to all objections or alleged infirmities affecting all four projects; and a second as to any objections that might affect individual projects. The hearing as to the objections affecting all four projects has been held and this decision is limited to them.

The basic objection advanced by plaintiffs' counsel is that the manner in which these four projects are being handled fails to comply with the provisions of law regulating highway improvements in the District of Columbia. Plaintiffs' counsel rely principally on Title 7 of the District of Columbia Code, Sections 108, 109 and 122. These provisions require the preparation by the Commissioners of the District of Columbia of a plan for a permanent system of highways. They prescribe that a map depicting this system be filed and that it be certified to the National Capital Planning Commission for recommendations. They require the recording of the map with the Surveyor. There are other detailed prerequisites that need not be summarized in detail. It is also provided that as new highways are planned, new highway plans may be prepared in the same manner.

**538**

Admittedly, these provisions of law have not been followed. It is argued, however, by the Corporation Counsel and by the Department of Justice that they are not applicable to the improvements involved in this law suit. The Congress has provided a system of Federal aid for highway improvements within the States, 23 U.S.C. § 101. The District of Columbia and the United States both contend that highways that are being constructed with Federal aid, as is the case in this instance, are subject solely to the requirements of the United States Code and are not regulated by the local Act. The Court agrees.

It is true that there is a basic principle of construction of statutes that wherever possible an apparent conflict between two statutes should be resolved so as to give effect to each. The Court gives effect to each to the extent of holding that the local statutes stand and are still applicable to local highway improvements. They do not apply to highway improvements constructed with Federal aid.

The Federal statute provides for certain steps to be taken; specifically, state highway departments—and this includes the District of Columbia—may submit to the Secretary of Commerce for his approval programs of proposed projects and the Secretary of Commerce,[1] to whom these projects are submitted for approval or disapproval, may approve or disapprove them and allocate funds for that purpose if he approves them. Highways so constructed are required to comply and conform to Federal standards. As an illustration of the fact that there was no intention to apply the local statute in addition to the Federal statutes to Federal aid highways, we may refer to the fact that the local statute places a maximum width on local highways of 160 feet. Federal highways, that is, those constructed with Federal aid, frequently exceed that width. Both statutes could not at the same time regulate the highway improvements referred to in this action.

In 1952 there was created for the District of Columbia the National Capital Planning Commission, 40 U.S.C. § 71a, which succeeded an older commission of a somewhat similar name and nature. The preparation and approval of plans for the development of the National Capital, including, of course, highways, is vested in the Commission. It appears that the projects in this instance were approved both by the Commission and by the District of Columbia Government, that is, its Highway Department and the District Commissioners.

The Court reaches the conclusion that the provisions of District of Columbia Code, Title 7, relating to highways are not applicable to the projects involved in this case or to any other highways built with Federal aid, and the objection made on this score is overruled.

It is then urged by plaintiffs' counsel that the Government of the District of Columbia has no power to acquire land by purchase, but may do so by condemnation only in the exercise of the power of eminent domain. This is an astounding contention and is not well founded.

Title 16, Section 1311 of the District of Columbia Code provides that:

"When real property in the District of Columbia is needed by the Board of Commissioners of the District for sites of schoolhouses, fire or police stations, or for a right of way for sewers or for any other municipal use authorized by Congress, and it cannot be acquired by purchase from the owners thereof at a price satisfactory to the officers of the District authorized to negotiate for the property, a complaint may be filed in the United States District Court for the District of Columbia in the name of the Board for the condemnation of the property or right of way and the ascertainment of its value."

It is clear that by the negative form of the statement, it is neces-

1. The functions of the Secretary of Commerce under the highway Act, have been recently transferred to the Secretary of Transportation, 49 U.S.C. § 1655.

sarily implied that the District of Columbia authorities not only are authorized but must first endeavor to purchase real property before undertaking to condemn it. The words "for any other municipal use authorized by Congress", are not subject to the limitation of the principle of statutory construction known as *ejusdem generis*. It is clear that the purpose of this section, although it is inartistically drawn, was to provide for the acquisition of real property by the District of Columbia for any governmental purpose. Perhaps the enumeration of specific purposes followed by the general clause was unnecessary, but we must take statutes as they are drafted. The Court, therefore, concludes that the District of Columbia Government has power to acquire real property for these improvements by purchase and if it does not succeed in acquiring them by purchase, then by condemnation.

■ The next objection consists of an attack on the validity of the action of the National Capital Planning Commission. This Commission is a Federal agency and not a local District of Columbia agency and, therefore, in the light of the doctrine of the *Frothingham* case, is not subject to suit in this case. The Court, however, is not going to limit its consideration to that point, because it has reached the conclusion that on the merits the criticisms leveled at the action of the Commission are not warranted.

The National Capital Planning Commission is an unusual organization. It is not a commission composed of individuals named as members of the commission. It is a commission composed primarily of officers of the government who are designated as members by their titles. In other words, as the incumbents of those offices change, so does the membership of the Commission shift.

The Commission is composed of the Chief of Engineers of the Army, the Engineer Commissioner of the District of Columbia, the Director of the National Park Service, the Commissioner of Public Buildings, the Federal Highway Administrator, the Administrator of the National Capital Transportation Agency, and the Chairmen of the Committees on the District of Columbia of the Senate and of the House of Representatives. In addition, there is a provision for the appointment by the President of five eminent citizens to serve as members of the Commission. In other words, the Commission consists of a number of governmental officials and five citizens from private life. Obviously, the *ex officio* members of the Commission are not expected to and cannot devote their entire time to its work. On the contrary, their services as members of the Commission are only one feature of their numerous activities. It has become the usage for the *ex officio* members to appoint alternates to act in their behalf.

■ It is objected by plaintiffs' counsel that alternates should not have been permitted to vote and that if they had not been permitted to vote, several of these four projects would not have received a sufficient number of votes of approval. It appears, however, and is not denied, that it has been the practice ever since the establishment of the Commission in 1952, to permit alternates to vote. Continuous administrative usage must be given due weight by the courts. The Court perceives no reason or basis for holding that the usage in this instance was in violation of law.

■ Plaintiffs' counsel argue that in 1929 a predecessor commission had adopted a resolution that under certain circumstances alternates should not vote. That resolution is not binding on the present Commission and was never from its very inception accepted as part of its procedure.

■ There is a second attack made on the legality of the action of the Commission. Attention is called to the fact that several of the *ex officio* members of the Commission entered into an agreement prior to the time when that Commission took its official action, by which they determined and committed themselves to approve certain projects in their official capacity. It is urged that by this means they pre-judged the issue and,

therefore, were disqualified to vote on the adoption and approval of these projects at a subsequent meeting of the Commission. That contention is not well founded and is lacking in merit. The National Capital Planning Commission is not a judicial, or a quasi-judicial tribunal; it is not a regulatory commission or an adjudicatory body. Manifestly, if it were, it would be inappropriate for members of the Commission to reach a decision or make a commitment which might affect their vote on a matter coming before them as members of the Commission. This Commission, however, is purely and solely an administrative group. It consists of members who have other duties to perform in respect to the very matters in regard to which they vote as members of the Commission. It must be assumed, that the two types of duties will affect each other. Necessarily, for instance, the activities of the Chief of Engineers of the Army, as such, may affect his vote as a member of the Commission. This is entirely proper. The very purpose of creating such a commission was to make the best use of governmental talent. The same may be said concerning other official members of the Commission. Accordingly, no infirmity is discernible in the action of the Commission in approving the plan, merely because some of its members may in the course of their official duties have previously approved parts of the plan in their other capacities.

This discussion disposes of the objections argued and advanced by plaintiffs' counsel that affect all of the four projects involved in this litigation. The Court, as indicated, will dismiss the complaint as to all of the plaintiffs except those who sue as taxpayers of the District of Columbia. It will dismiss the complaint as to the so-called Federal defendants, that is, those defendants who are officers of the Government of the United States, because there is no standing to sue them in the light of the *Frothingham* case. The pending motions are still to be considered in respect to objections directed individually to specific projects and which have not as yet been argued. The action may be maintained only as against the District of Columbia defendants and only, of course, in behalf of those plaintiffs who are taxpayers of the District of Columbia.