**ROLLINS OUTDOOR ADVERTISING, INC., et al., Appellants,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 80–524.

District of Columbia Court of Appeals.

Argued Feb. 12, 1981.

Decided Sept. 2, 1981.

Thomas W. Hussey, Washington, D.C., with whom Edward L. Weidenfeld, Washington, D.C., was on the briefs, for appellants. Maureen Duignan, Washington, D.C., also entered an appearance for appellants.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before KERN, MACK and FERREN, Associate Judges.

KERN, Associate Judge:

The District of Columbia sued to acquire and determine just compensation for an easement estate and five billboards owned by appellant Rollins Outdoor Advertising, Inc. (Rollins), at 6th Street and Pennsylvania Avenue, S.E., Washington, D.C. (Record at 1–15.) The complaint alleged that the District sought to take the property for "municipal purposes in the southeast section of the District of Columbia."[1] (Record at 1.) The District asserted authority for the taking under D.C. Code 1973, § 16–1311, which provides:

> When real property in the District of Columbia is needed by the Commissioner of the District for sites of schoolhouses, fire or police stations, or for a right of a way for sewers, or for *any other municipal use authorized by Congress*, and it can not be acquired by purchase from the owners thereof at a price satisfactory to the officers of the District authorized to negotiate for the property, a complaint may be filed in the Superior Court in the name of the District of Columbia for condemnation of the property or right of way and the ascertainment of its value. (Emphasis added.)

MacFarland v. Elverson, 32 App. D.C. 81 (1908), established the basic interpretation of D.C. Code 1973, § 16–1311. The court in *MacFarland* stated: "It is well established that statutes providing for the condemnation of private property for a public use must be strictly construed. If any doubts exist as to the authority to proceed under such statutes, these doubts must be resolved in favor of the person whose property is sought to be taken." *Id.* at 85–86. The court held that the statute gave the District "full power and discretion in the condemnation of land for sites for schoolhouses, fire or police stations, and for a right of way for sewers [the purposes specifically expressed in the statute] reserv-

1. The District also relied for authorization to acquire these billboards and the easement estate on the Highway Beautification Act of 1965, 23 U.S.C. §§ 131, 315 (1976). Section 131 con-

cerns the control of outdoor advertising and Section 315 authorizes the promulgation of regulations by the Secretary of Commerce.

ing to itself the discretion and power to direct as to all other municipal purposes." *Id.* at 87. *MacFarland* basically holds that as to the purposes enumerated in the statute, the District can condemn without further authorization from Congress; all it needs is money. *See Commissioners of the District of Columbia v. Shannon & Luchs Const. Co.,* 57 App.D.C. 67, 69, 17 F.2d 219, 221 (1927) ("the mere act of appropriating the money by Congress, for the purposes specified in the act [D.C. Code 1973, § 16–1311—in that case, a high school athletic field, part of a school] is sufficient to authorize the exercise of the power of eminent domain by the commissioners to carry the purpose into effect"); *MacFarland, supra* at 88 (sewers).

▆ In our view the District must have specific authorization to *condemn* from Congress; cannot *condemn* simply because Congress has directed the District to perform some general function such as regulating outdoor advertising. Thus, in *D.C. Federation of Civic Associations v. Airis,* 275 F.Supp. 533 (D.D.C. 1967), *reversed on other grounds,* 129 U.S.App.D.C. 125, 391 F.2d 478 (1968), Congress attached a rider to the 1913 District Appropriations Act which established a procedure for changing street and highway plans and *expressly* gave the District the power to condemn to open and widen streets in accordance with the plan. *Airis, supra,* at 127–28, 391 F.2d at 480–81; see D.C. Code 1973, § 7–201.

The District asserts that the District of Columbia Appropriation Act of 1974, Pub L. No. 93–91, enacted August 14, 1973, 87 Stat. 306 (1973) (1974 Appropriation Act), fulfills the requirement of congressional authorization under § 16–1311. Appellee further asserts that a court may look behind the

language of an appropriations act such as this in order to determine the purpose of the appropriation, and that an examination of its legislative history demonstrates the intent of Congress to authorize the condemnation of these very billboards through that specific Act.[2]

Appellant Rollins contends that, without at least a specific mention of condemnation in an appropriations act and thus a clear expression of congressional authority to confer that power to condemn, an appropriations act generally cannot provide the necessary authorization required by § 16–1311. Appellant further argues that since the 1974 Appropriation Act does not contain any mention of condemnation, the present condemnation suit is without merit.

The trial court, after holding a hearing on the merits of these contentions, issued an order on March 28, 1980, permitting the District to enter the property of Rollins on which they are located and remove the signs.[3] The trial court stated in its order that:

> the District of Columbia Appropriations Act for the fiscal year ending June 30, 1974, (P.L. 93–91, August 14, 1973) provided funds *for outdoor advertising control which by definition from supporting documentation is "to reimburse sign and property owners for the removal of signs...." Since Congress has the power to grant to the District of Columbia the specific authority to seek the condemnation in this case, it follows that if Congress appropriated the funds for the District of Columbia to take the property in question the Congress thereby, by necessary implication, authorized the District of Columbia to seek condemnation of the property in question.* Swan Lake Hunt-

---

**2.** The 1974 Appropriation Act provides, *inter alia,* that:

> the following sums are appropriated, out of any money in the Treasury not otherwise appropriated, for the District of Columbia for the fiscal year ending June 30, 1974, and for other purposes, namely: For ... *construction projects* as authorized by the Acts of April 22, 1904 (33 Stat. 244), May 18, 1954 (68 Stat. 105, 110), June 6, 1958 (72 Stat.

183), August 20, 1958 (72 Stat. 686), and the Act of December 9, 1969 (83 Stat. 321); *including acquisition of sites ... to remain available until expended, $128,178,000....* (Emphasis added.)

**3.** The court determined that the Highway Beautification Act did not provide the authorization for condemnation. The District did not appeal this ruling.

ing Club v. United States, *381 F.2d 238, 240 (5th Cir. 1967). [Record at 59–60; emphasis added.]*

The issue in this case is clearly drawn and both parties concede its dispositive nature: Was the 1974 Appropriation Act sufficient to authorize the instant condemnation?

Courts have concluded that an appropriations act fulfills a substantive legislative function only if the congressional intent is clear. *See Sierra Club v. Andrus,* 610 F.2d 581, 601, 605 n. 36 (9th Cir. 1979), *cert. granted,* 449 U.S. 818, 101 S.Ct. 68, 66 L.Ed.2d 19 (1980); *Libby Rod and Gun Club v. Poteat,* 594 F.2d 742, 746 (9th Cir. 1979). The intent was not clear from a reading of the 1974 Appropriations Act since no where in this Act was there any reference to the subject of condemnation or to the property of Rollins or to the acquisition of an easement estate to remover billboards.

The District, turning to the legislative history of the 1974 Appropriation Act points to a part of what it characterizes as the "justification submitted to Congress in support of the request" for funds: specifically, the District of Columbia requested $12,000 "to reimburse sign and property owners for the removal of signs on residential property." (Record at 55.) The justification for funds itself breaks down the request for $12,000 for "Outdoor Advertising Control" into $1,000 for construction services, $11,000 for construction and $0 for site.

The District further points to the fact that Congress allocated $128,178,000 for capital outlay under the 1974 Appropriation Act and, in what the District characterizes as "Congress' summary of the capital development appropriations for the District," referred to this request by its designated number and contained a line item of $12,000 for "Outdoor Advertising Control."

■ In our view, the phrases "Outdoor Advertising Control" and "to reimburse sign and property owners for the removal of signs on residential property" do not bespeak a clear intent on the part of Congress to authorize condemnation; to the contrary, these are compatible with the pur-

chase of billboards from *voluntary* sellers and the regulation rather than the taking of outdoor advertising. The fact that all $12,000 was to be used for construction and construction services and that none was allocated under the heading of "site" further undermines the District's argument that such appropriation by Congress was for the purpose of authorizing an eminent domain taking by the District. While the plain meaning of words is always preferred in construing a statute, *United States v. Stokes,* D.C.App., 365 A.2d 615, 618 (1976), the words of the statute in this instance do not reflect a "plain meaning."

In determining the extent to which we may use the legislative history of the Act to ascertain the congressional authorization of condemnation, we note that in the related area of repeal by implication, the Supreme Court has indicated that little weight is given to the expressions of appropriations committees. The Court notes they have no jurisdiction over the substance of the programs for which they recommend funding, and their lack of knowledge of these programs is demonstrated when the legislative history contains no indication that Congress as a whole was aware of the Committee's views. *See TVA v. Hill,* 437 U.S. 153, 191–93, 98 S.Ct. 2279, 2300–01, 57 L.Ed.2d 111 (1978). Here, the legislative history, as contained in the Committee Report, was wholly unilluminating on the issue of whether the specific property of Rollins was to be condemned.

For this court to go even further back, as we are urged to do by the District (Appellee's Brief at 6–7), to the appropriations committee hearings or to discussions between District of Columbia and federal officials concerning compliance by the District with the Federal Highway Act, would add even greater strain to a distended credibility concerning what was in the collective mind of Congress at the time the 1974 Appropriation Act was passed.

*Swan Lake Hunting Club v. United States, supra,* upon which the trial court relied, is inapposite. In that case, the trial judge relied upon 40 U.S.C. § 257, which has been consistently "interpreted to authorize

acquisition by condemnation where specific authority to purchase has been conferred." *Id.* at 240. It is not argued that this federal statute applies to the instant case nor that this statute has an analog in the District of Columbia Code. Barring the applicability of this statute or the existence of its analog, the rationale of the *Swan Lake* case has no relevance to the instant proceeding.

In sum, we are persuaded that the condemnation of the instant billboards and easement estate of appellant Rollins was improper, and the decision of the trial court must be reversed, since an appropriations act may only serve as substantive enabling legislation when the congressional intent is clear and the congressional intent is not clear in the 1974 Appropriations Act.

*Reversed.*

MACK, Associate Judge, dissenting:

As so often happens in the vagaries of law, the issue here is obscured by its language. The majority is talking about "condemnation" and I am talking about "control." The majority is talking about "taking property" and I am talking about "removing signs."

In my view, the 1974 Appropriations Act [1] authorized the District of Columbia to get rid of "non-conforming" billboards in specific areas of the city by whatever means, including condemnation if necessary. Of course, we may look—indeed we must look—to legislative history in determining what the intent of Congress was in allotting $12,000 (of a $128,178,000 amount for capital outlay) to "Outdoor Advertising Control."

The City had requested $12,000 for a specific project (Project Number 107), explaining that "these funds required to reimburse sign and property owners for the removal of signs on residential property." At hearings on the Appropriations Act, it was the Director of the District of Columbia Department of Highways who explained the purpose of the project as follows:

It is a desirable project wherein we get rid of a *few bill board-type signs* in the District of Columbia. As you know the regulations are quite tight and we don't have a big problem, but *these have been in existence for a long time,* and the Federal Highway Administration keeps reminding us that we should do it as a part of the Federal Highway Act.[2] [Emphasis added.]

I think this history conclusively shows that Congress knew the City was seeking $12,000 to comply with "the Highway Act," [3] the very scheme of which contemplates and encourages condemnations when necessary in the interest of safety, public investment and natural beauty[4]—and that Congress, in giving the City $12,000 to control advertising, authorized the City to seek compliance by whatever means. When appellants refused the City's offer to buy the billboards, the City sought condemnation by complaint in the Superior Court for "a municipal use authorized by Congress." *See* D.C. Code 1973, § 16–1311. The "easement estate" sought had nothing to do with the taking of a "site" but rather the right to enter now and in the future to demolish these and similar billboards. The appeal in this court is one from the trial court's order granting the City's motion to enter the site and to remove the billboards.

It is not by accident that Washington is a beautiful city. I would affirm the order of the trial court.

---

1. District of Columbia Appropriation Act of 1974, Pub. L. No. 93–91 enacted August 14, 1973 (87 Stat. 306) (1973).

2. District of Columbia Appropriations Act for 1974: Hearings before the Subcomm. on District of Columbia Appropriations of the House Comm. on Appropriations 93rd Cong., 1st Sess. 906, 979 (1973).

3. *See* the Highway Beautification Act of 1965, Pub. L. No. 89–285, 79 Stat. 1028 codified at 23 U.S.C. § 131 (1970).

4. *See* 23 U.S.C. § 131(g) (1976).