# Power of the President to Remove Presidential Appointees from the National Capital Planning Commission

There is no indication in the text or legislative history of the Home Rule Act that Congress intended to limit the President's power to remove his appointees from the National Capital Planning Commission.

The composition of the Commission and the duties imposed on it indicate that Congress did not intend it to be a quasi-legislative or quasi-judicial body operating free of the President's policy influence, and its duties are essentially of an executive nature. Thus any limitation on the President's removal power would be unconstitutional.

March 17, 1982

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

This responds to your request for our opinion concerning the President's power to remove presidential appointees from the National Capital Planning Commission (Commission). For the reasons stated hereafter, we conclude that those appointees serve at the pleasure of the President and may be removed summarily by him from their positions.

The Commission dates from the enactment of legislation in 1924, Act of June 6, 1924, ch. 270, 43 Stat. 463. Its present composition, functions, and responsibilities, however, are based on the District of Columbia Self-Government and Governmental Reorganization Act of 1973, Pub. L. No. 93–198, 87 Stat. 774 (Home Rule Act), in particular on § 203, 87 Stat. 779, 40 U.S.C. § 71a (1982). The Commission consists of seven *ex officio* members, *viz.*, the Secretary of the Interior, the Secretary of Defense, the Administrator of General Services, the Mayor of the District of Columbia, the Chairman of the District of Columbia Council, the Chairmen of the Committees on the District of Columbia of the Senate and the House of Representatives, and of five appointed members with experience in city or regional planning, three of whom are to be appointed by the President alone and two by the Mayor. 40 U.S.C. § 71a(b). We understand that your inquiry is directed only at the President's power to remove the presidentially appointed members.

The members of the Commission appointed by the President serve for six-year, staggered terms. 40 U.S.C. § 71a(b)(2). The Commission was created as:

> [T]he central Federal planning agency for the Federal Government in the National Capital, and to preserve the important historical and natural features thereof, . . . 40 U.S.C. § 71a(a)(1).

191

The statute charges the Commission with the "principal duties"

> to (1) prepare, adopt, and amend a comprehensive plan for the Federal activities in the National Capital and make related recommendations to the appropriate developmental agencies; (2) serve as the central planning agency for the Federal Government within the National Capital region, and in such capacity to review their development programs in order to advise as to consistency with the comprehensive plan; and (3) be the representative of the Federal and District Governments for collaboration with the Regional Planning Council, as hereinafter provided.

40 U.S.C. § 71a(e).

The Commission has the following planning responsibilities for the National Capital:

a. to adopt a comprehensive plan for the federal activities in the Nation's Capital, 40 U.S.C. § 71a(e);

b. to disapprove those parts of the comprehensive plan adopted by the appropriate District of Columbia agencies which have a negative impact on the interests or functions of the federal establishment in the Nation's Capital, 40 U.S.C. § 71a(a)(4); and

c. to prepare a comprehensive plan consisting of the Commission's recommendations for the federal element developed under (a) *supra,* and of those parts of the plans prepared by the District authorities with respect to which the Commission has not determined that they have a negative impact on the federal establishment and which shall be incorporated in the comprehensive plan without change, 40 U.S.C. § 71c(a).

The District of Columbia Court of Appeals has summarized and characterized the Commission's planning functions under the Home Rule Act as follows:

> [T]he NCPC's [Commission's] planning role is limited to preparing the federal elements of the comprehensive plan for the National Capital and to exercising veto authority over those proposed District elements which it finds will have a negative impact on the interests of the Federal Establishment. *Citizens Ass'n of Georgetown* v. *Zoning Commission of the District of Columbia,* 392 A.2d 1027, 1034 (1978).

Our initial inquiry focuses on the question whether, in enacting legislation establishing and maintaining the Commission, Congress has evidenced an intent to limit the power of the President to remove the presidential appointees to the Commission. The second inquiry is whether, assuming Congress intended to limit the President's removal power, Congress constitutionally could have done so. We have set out the functions of the Commission in detail, since the nature of those functions is relevant under existing case law to the issue of congressional intent as well as to the constitutional issue.

According to the basic rule of construction, first announced by James Madison during the first session of the First Congress, the power of appointment carries with it the power of removal. 1 Ann. Cong. 496 (1789). The courts have consistently upheld the general applicability of that rule. *Matter of Hennen*, 13 Pet. (38 U.S.) 230, 259–60 (1839); *Blake v. United States*, 103 U.S. 227, 231 (1880); *Myers v. United States*, 272 U.S. 52, 119 (1926); *Cafeteria Workers v. McElroy*, 367 U.S. 886, 896–97 (1961); *National Treasury Employees Union v. Reagan*, 663 F.2d 239, 246–48 (D.C. Cir. 1981).

The Home Rule Act does not on its face limit the President's removal power. We have carefully examined the legislative history of the Act and have not found any evidence of such intent or any indication that Congress wanted the presidential appointees to the Commission to be "independent" of the President. The provision in § 203(b)(2), (40 U.S.C. § 71a(b)) that the terms of the members of the Commission appointed by the President shall be for six years does not have the legal effect of limiting the President's removal power. It has been established, since *Parsons v. United States*, 167 U.S. 324, 338 (1897), that a provision for a term merely means that the officer shall not serve beyond his term without a reappointment which would subject him to the scrutiny of the appointing authority. A term of office in itself therefore does not create a right to serve for its maximum duration; it constitutes a limitation on, rather than a grant of, the officer's tenure. *Parsons, ibid.* To the same effect are *Martin v. Tobin*, 451 F.2d 1335, 1336 (9th Cir. 1971) (U.S. Marshal); *Carey v. United States*, 132 F. Supp. 218 (Ct. Cl. 1955) (U.S. Attorney); *Farley v. United States*, 139 F. Supp. 757, 758 (Ct. Cl. 1956) (U.S. Marshal). This point was conceded even in the dissenting opinion of Justice Brandeis in *Myers v. United States, supra*, 272 U.S. at 241.[1]

*Wiener v. United States*, 357 U.S. 349, 355–56 (1958), indicates that a congressional intent to limit the President's removal powers may be inferred from the imposition of quasi-legislative or quasi-judicial functions on an officer or a

[1] *Borders v. Reagan*, 518 F Supp 250, 255, 260 (D D C. 1981), *appeal pending* D.C. Cir Docket No. 81-1998, which involved the interpretation of § 434 of the Home Rule Act, seeks to distinguish *Parsons* on the theory that when Congress, in providing for a term of office, uses the words "shall serve for x years," as it does in § 434, Congress expresses an intent that the officer shall serve out the term independent of Presidential direction and, therefore, from summary removal. On the other hand, the court reasoned, when Congress uses the words "shall be appointed for a term of x years," as it did in the statute involved in *Parsons* and now in 28 U S.C §§ 541(b) and 561(b), Congress indicates that the officer shall be subject to the President's direction and, therefore, his removal power Such literalism might have been appropriate in the context of 17th century conveyancing, but we believe it does not constitute a suitable method of discerning legislative purpose Indeed, the Home Rule Act, and especially § 203, 40 U S.C 71a, the section here involved, uses both formulas interchangeably Section 203 provides that "the terms of office of the members appointed by the President shall be for six years ," while "[m]embers appointed by the Mayor shall serve for four years " Nowhere is there any indication that Congress intended the presidential appointees to be removable, while the members appointed by the Mayor are entitled to serve out their terms. We believe the correct means of ascertaining the legislative purpose is to proceed on the assumption Congress is aware of the longstanding judicial interpretation placed on a provision for a term, *viz* , that it constitutes a limitation rather than a grant, and that Congress uses unmistakable and express language, rather than subtle modifications in the term formula, when it intends to make an official nonremovable during his term. Congress knows that the Executive Branch has consistently taken the position that the President may remove appointees except where Congress clearly (and constitutionally) intended the contrary result. We are compelled to conclude that Congress will make its intentions unmistakably clear when it intends to limit the President's removal power [NOTE: In *Borders v. Reagan*, the court of appeals granted the government's motion to vacate the district court's order and remanded for dismissal on grounds of mootness 732 F.2d 181 (D.C. Cir. 1982) Ed ]

Commission. The composition of the Commission and the duties imposed on it demonstrate, however, that Congress did not intend it to be a quasi-legislative or quasi-judicial body in the context suggested by *Wiener*. The inclusion in the Commission of two Cabinet Members (the Secretary of Defense and the Secretary of the Interior) and of the Administrator of General Services suggests very strongly the absence of any congressional purpose that the Commission should be free from the policy influence of the President.[2] In addition, a contrary inference is to be drawn from the Commission's functions. The preparation of a comprehensive plan for the federal activities in the Nation's Capital, *i.e.*, to plan the location and appearance of buildings used by federal agencies, and to prevent the planning authorities of the District of Columbia from encroaching on the interests or functions of the federal establishment, are essentially of an executive nature. They cannot be and have not been considered to be quasi-legislative or quasi-judicial in character. This analysis of the Commission functions and duties has been adopted by the courts. In *D.C. Federation of Civic Associations* v. *Airis*, 275 F. Supp. 533, 540 (D.D.C. 1967) the court held, per Holtzoff, J.:

> The National Capital Planning Commission is not a judicial, or a quasi-judicial tribunal; it is not a regulatory commission or an adjudicatory body. . . . This Commission is purely and solely an administrative group.

We recognize that some courts have characterized zoning as a quasi-legislative function in view of the limitations it usually imposes on the use of private property. *See, e.g., Gerstenfeld* v. *Jett*, 374 F.2d 333, 335 (D.C. Cir. 1967). Planning and zoning, however, are not identical or interchangeable terms. 8 McQuillin, Mun. Corp., § 25.08 (3rd Ed., 1983 Revised Vol.).[3] This is evidenced by the circumstance that, in the District of Columbia, the planning authority for non-federal property is vested in the Mayor and Council, D.C. Code § 1–2002 (1981), while the zoning authority for those projects is vested in the Zoning Commission of the District of Columbia. D.C. Code § 5–412 (1981). Moreover, since the Commission regulates only the use of federal property and prevents encroachments on the federal interest by the local planning and zoning authorities, it does not possess the "quasi-legislative" power limiting land use by a private property owner.[4]

---

[2] We believe that the presence of the two congressional committee chairmen on the Commission does not confer upon it a quasi-legislative character, and is not indicative of a congressional intent to that effect. In the fields of managing and protecting the property of the United States, Congress acts in a dual capacity, *i.e.*, not only as a legislative body but also, under Article IV, § 3, cl. 2 of the Constitution, as the owner or trustee of the property. *United States* v. *Midwest Oil Co.*, 236 U.S. 459, 474 (1915); *Kleppe* v. *New Mexico*, 426 U.S. 529, 540 (1976), and the authorities there cited. Since the principal functions of the Commission are to plan for the proper use of the federal holdings in the District of Columbia, to protect them against local encroachment, and to acquire property for certain federal purposes (40 U S C. § 72), the two committee chairmen are essentially acting as officers of Congress appointed to represent Congress rather than to exercise in any fashion Congress' *legislative* power.

[3] This point is made graphic by a comparison of the opinions in *American University* v. *Prentiss*, 113 F.Supp. 389, 393 (D.D.C. 1953), *aff'd*, 214 F.2d 282 (D.C. Cir.), *cert. denied*, 348 U S. 898 (1954), with *D.C. Federation of Civic Associations* v. *Airis*, *supra*, both of which were handed down by Judge Holtzoff. The former opinion held that a zoning commission performs a [quasi] legislative function, the latter, as shown above, decided that the Commission is "purely and solely an administrative group."

[4] To the extent that the D.C. elements of the comprehensive plan prepared and adopted by the Commission pursuant to 40 U.S.C. § 71c(a) limit private land use, the Commission only acts as a conduit without power of amendment

194

*Borders* v. *Reagan,* 518 F. Supp. 250, 259, 264–68 (D.D.C. 1981), *appeal pending,* D.C. Cir. Docket No. 81–1998, appears to be based on the assumption—erroneous in our view—that the power of Congress to limit the President's removal power is somehow increased or more readily assumed in the case of officers confined exclusively to local District of Columbia matters. The Commission, however, is not such an agency.

The very language of the Home Rule Act defines the Commission as the central *federal* planning agency for the federal government in the Nation's Capital (§ 203(a)(1), 40 U.S.C. § 71a(a)(1)). The use of the term "Federal" was no drafting accident. The legislative history of the Home Rule Act is replete with statements stressing that the Commission is designed to be a *federal* agency charged with the protection of the *federal* interest. Thus the House Report (H.R. Rep. No. 482, 93d Cong., 1st Sess. (1973) states (at p.7):

> The NCPC is designated as a Federal Planning Agency for the Federal Establishment in the District, and the Commissioner (Mayor) is designated as the central planning agency for the District except for Federal and international projects.

And again (at p.17):

> [Section 203 establishes] the National Capital Planning Commission as a Federal Planning Agency. . . .

The conference report (H.R. Rep. No. 703, 93d Cong., 1st Sess. 74 (1973)) shows that the conference adopted the pertinent House provisions:

> The House amendment contained provisions, not included in the Senate bill, which established the NCPC as a Federal planning agency for the Federal government to plan for the Federal establishment in the National Capital region and provided that the Mayor would be the central planning agency for the District. . . .
>
> The Conference substitute (sections 203, 423) adopts, in essence, the House provisions. . . .

These passages in the committee reports are corroborated by statements made during the debates on the adoption of the bill in which the Commission was characterized as "a Federal entity" (Congressman Broyhill, 119 Cong. Rec. 33381); "Our Federal protection arm" (Delegate Fauntroy, *id.* at 33384); "a Federal body" (Congressman O'Neill, *id.* at 33386); "[t]he bill will: first, strengthen the role of NCPC as the principal planning agency for the Federal Government in the city and in the National Capital region as a whole" (Congressman Stark, *id.* at 33392). Similar statements were made during the debate on the adoption of the conference report in that body. The Commission was characterized as "the Federal planning agency" (Congressman Diggs, who was in charge of the bill, 119 Cong. Rec. 42037); "a Federal entity" (Congressman Broyhill, *id.* at 42043); "a Federal agency such as the National Capital Planning Commission which is designed to protect the Federal interest" (Congressman Nelsen, *id.* at 42051).

Similarly, the court of appeals held in *D.C. Federation of Civic Associations* v. *Airis*, 391 F.2d 478, 484 (D.C. Cir. 1968), that the Commission's duties "are federal in nature."[5]

The Commission thus is not confined to local matters within the meaning of the district court's opinion in *Borders, supra*. To the contrary, the Commission is a federal agency and an important part of its responsibilities is to prevent local activities from interfering with the federal establishment.

We therefore conclude that Congress neither expressly nor by implication limited the President's power to remove his appointees to the Commission.

Assuming, *arguendo*, that Congress had sought to limit the President's removal power in the premises, such attempt would, in our view, have been unconstitutional under controlling precedent. It has been firmly established that Congress cannot limit the President's power to remove executive officers. *Myers* v. *United States, supra*. This aspect of *Myers* was recently reaffirmed in *Buckley* v. *Valeo*, 424 U.S. 1, 135–36 (1976). *See also Martin* v. *Tobin*, 451 F.2d 1335 (9th Cir. 1971).[6] The Constitution permits express or implied statutory limitations on the President's removal power only in the case of officers performing quasi-judicial or quasi-legislative functions. *Humphrey's Executor* v. *United States*, 295 U.S. 602 (1935); *Wiener* v. *United States*, 357 U.S. 349 (1958). As discussed above, the Commission's duties are of an executive, rather than quasi-judicial or quasi-legislative, nature.[7]

We therefore conclude that Congress did not limit the President's power to remove the presidential appointees to the Commission.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[5] This decision is not an appeal from the case involving the same parties referred to earlier in this opinion

[6] The *Myers* case, it is true, is limited to officers appointed by the President by and with the advice and consent of the Senate, and the presidential appointees to the Commission are appointed by the President alone. *Perkins* v. *United States*, 116 U.S. 483 (1886), held that where Congress vests the appointment power in a Department head under the terminal clause of Article II, § 2 of the Constitution, it may limit his removal power. *Myers* did not decide the question whether *Perkins* applies also to the situation where the power of appointment is vested in the President alone because that issue was not before it. It suggested, however, strongly that this question is to be answered in the negative 272 U.S. at 161–62 In *Martin* v *Reagan*, 525 F. Supp 110 (D. Mass 1981), the court held that an officer appointed by the President alone serves at the pleasure of the President.

[7] To the extent that *Borders, supra*, suggests that Congress has the power under the Constitution to limit the President's removal power with respect to officers whose duties are confined to local District of Columbia matters, as discussed, *supra*, the functions and duties of the Commission are federal rather than local